## LEE v. MOORE.

(Court of Civil Appeals of Texas. Dallas. Nov. 22, 1913. Rehearing Denied Jan. 10, 1914.)

1. APPEAL AND ERROR (§ 302*)—MOTION FOR NEW TRIAL—RULING ON INSTRUCTIONS.

A ruling giving or refusing instructions need not be included in the motion for new trial to preserve it for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1744–1752; Dec. Dig. § 302.*]

2. PHYSICIANS AND SURGEONS (§ 15*) — MALPRACTICE — FURNISHING SUBSTITUTE — NATURE OF DUTY.

Where a physician specially employed to attend upon a patient sends a substitute, he must select one possessing that degree of knowledge, skill, and care which physicians ordinarily possess, and, if he does not, he is primarily liable for all damages proximately resulting therefrom; the mere exercise of ordinary care in the selection being insufficient.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 32; Dec. Dig. § 15.*]

3. PHYSICIANS AND SURGEONS (§ 15*)—MALPRACTICE — LACK OF SKILL AND CARE — ASSISTANT.

A physician is responsible for an injury done to a patient through want of proper skill and care in his apprentice or assistant.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 32; Dec. Dig. § 15.*]

4. PARTNERSHIP (§ 153*) — MALPRACTICE — PARTNERSHIP LIABILITY.

Partners in the practice of medicine are all liable for an injury resulting from the negligence of any partner within the scope of their partnership business.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 274–277; Dec. Dig. § 153.*]

5. PHYSICIANS AND SURGEONS (§ 13*)—CONTRACT OF EMPLOYMENT—DURATION.

Where a physician responds to the call of a patient, he thereby becomes engaged, in absence of special agreement, to attend to the case as long as it requires attention, unless he gives notice to the contrary or is discharged by the patient.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 18–20; Dec. Dig. § 13.*]

6. PHYSICIANS AND SURGEONS (§ 14*)—CONTRACT OF EMPLOYMENT—SKILL AND CARE—IMPLIED CONTRACT.

A physician impliedly contracts that he possesses that degree of knowledge, skill, and care which physicians practicing in similar localities ordinarily possess, but does not impliedly warrant a cure, and is not a guarantor of success in the absence of express agreement.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 21–30; Dec. Dig. § 14.*]

7. PHYSICIANS AND SURGEONS (§ 15*)—UNWARRANTED ABANDONMENT OF CASE — LIABILITY.

A physician may be held liable for increased pain and suffering consequent upon his unwarranted abandonment of a case at a critical period.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 32; Dec. Dig. § 15.*]

8. PHYSICIANS AND SURGEONS (§ 18*)—ABANDONMENT OF CASE—EXCUSE—QUESTION FOR JURY.

In an action against a physician for injuries resulting from his furnishing an incompetent substitute, the question whether the fact that defendant expected to attend court on that day and had other pressing professional and business engagements to which he could not give his attention and at the same time attend plaintiff's wife furnished a sufficient excuse for defendant's failure to attend in person when called by plaintiff was for the jury.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 34–41, 43–46, 48; Dec. Dig. § 18.*]

9. EVIDENCE (§ 155*)—ADMISSIBILITY—SIMILAR EVIDENCE OF ADVERSE PARTY.

In an action against a physician for malpractice, it was not an abuse of discretion to refuse to permit defendant's witnesses to illustrate with a manikin the proper method of delivering a child, though similar evidence, offered by plaintiff, had been previously admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

10. APPEAL AND ERROR (§ 738*) — ASSIGNMENTS OF ERROR—LEADING QUESTIONS.

Where some of the questions asked a witness were not leading, an assignment of error complaining of such questions as a whole, on the ground that they were leading, was insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3033; Dec. Dig. § 738.*]

11. PHYSICIANS AND SURGEONS (§ 18*)—MALPRACTICE—DEFENSE—QUESTION FOR JURY.

Under conflicting evidence, in an action against a physician for injuries to plaintiff's wife, due to lack of skill and care by defendant's substitute, the question whether plaintiff was intoxicated and threatened such substitute with a pistol, and thus contributed to his failure to exercise ordinary skill and care in the treatment, was for the jury.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 34–41, 43–46, 48; Dec. Dig. § 18.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by S. E. Lee against H. Leslie Moore. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Gibson & Callaway, of Dallas, for appellant. Thomas & Rhea and J. D. Hunt, all of Dallas, for appellee.

TALBOT, J. Appellant, S. E. Lee, sued appellee, H. Leslie Moore, for malpractice, claiming damages for injuries to his wife while confined in childbirth on account of alleged negligence upon the part of appellee, and also alleged negligence and want of professional skill upon the part of one Dr. A. D. Hardin, acting as appellee's agent or sub-

stitute. Appellee was a regular practicing physician, and held himself out to the public for the practice of his profession. Some time prior to February 6, 1911, appellant's wife being pregnant with child, appellant called upon appellee and arranged with him to treat her during her confinement. At night, on or about the 5th day of February, 1911, appellant's wife was stricken with illness occasioned by childbirth, and, at the instance of appellant, appellee called upon and undertook the treatment of said patient. Appellant alleged that, while his wife was critically ill, appellee, without cause or notice, abandoned the treatment of the case, and, without the knowledge or consent of appellant, sent as a substitute for himself one Dr. A. D. Hardin, a physician, youthful, inexperienced, and lacking in that degree of professional skill required of him by law. Appellant further alleged that on account of the negligence of appellee in failing to make a proper diagnosis of the patient, and his wrongful act in abandoning the treatment of her, and on account of the negligence of the said Hardin in failing to promptly attend said patient, and his lack of professional skill and ability, said patient received serious and painful injuries and suffered great physical pain and mental anguish, in addition to what she otherwise would have received and suffered, for which appellant prayed damages in the sum of $10,000. Appellee answered by general denial, and special answer to the effect that, owing to the fact that he expected to attend court at Ft. Worth, and had other pressing professional and business engagements, he was unable to continue the treatment of plaintiff's wife, and arranged with Dr. Hardin to assist him in treating said patient, and further, that at the time Dr. Hardin called upon said patient, appellant was in a state of intoxication and flourished a pistol, threatening to do the said Hardin serious bodily harm and used profane language in the said Hardin's presence and hearing, and refused to permit the said Hardin to call appellee to his assistance in the treatment of said patient, and that, by such acts and conduct upon the part of appellant, he contributed to and caused any injuries that his wife may have received. A jury trial resulted in a verdict and judgment in favor of appellee and appellant's motion for a new trial being overruled he appealed.

[1] The case was affirmed at the last term of this court, without a consideration of appellant's assignment of error, and in due time he filed a motion for a rehearing. We were of opinion that, inasmuch as neither of the assignments disclosed that the error therein complained of was distinctly set forth in a motion for a new trial in the district court, and did not point out the page of the transcript or particular clause of the motion in which the error was complained of in accordance with rules 24 and 25 (142 S. W. xii) as recently promulgated by the Supreme

Court for the government of the Courts of Civil Appeals, such errors should be considered as waived. According to the opinion of the Supreme Court in Railway Co. v. Beasley, 155 S. W. 183, we were in error in so concluding, and under the authority of that case the assignments will now be considered, our former opinion withdrawn, and this opinion filed in lieu thereof.

The main questions presented for our decision arise under assignments of error challenging the correctness of the trial court's action in giving certain instructions to the jury and in refusing to give certain special charges requested by the appellant.

In the general charge of the court the jury were instructed that if the defendant failed to use ordinary care and diligence in looking after plaintiff's wife in so far as he did the work himself, or failed to use ordinary care in selecting a physician as a substitute for himself to act in taking care of plaintiff's wife, and that, as a proximate result of such failure, if any, to use ordinary care and diligence, plaintiff's wife was injured, then, and in either event, they should return a verdict for the plaintiff, unless they should find for the defendant under some succeeding paragraph of the charge or in the special charges given them. In a subsequent paragraph of the charge they were instructed as follows: "If you do not, from a preponderance of the evidence, so find that the defendant failed to use ordinary care and diligence in looking after plaintiff's wife, in so far as he did the work himself, or that he failed to use ordinary care and diligence in selecting a substitute for himself to act in taking care of plaintiff's wife, or if you fail to find that plaintiff's wife was injured on account of defendant's said failure, if any, to use ordinary care and diligence, then, and in either event, you should return your verdict for the defendant." After the case had been submitted to the jury and after they had retired to consider of their verdict, they returned into open court and asked the court to instruct them whether or not appellee, Moore, was required to furnish as his substitute a physician possessing the same degree of skill and qualifications as he himself possessed. In response to this request, and at the instance of the appellee's counsel, the court instructed the jury as follows: "In furnishing a substitute the defendant was only required to use ordinary care to furnish a physician possessing that degree of skill and ability as is usually possessed by physicians engaged in the general practice of medicine in the city of Dallas and vicinity." The appellant requested, among others, the following special charge, which was refused: "You are instructed, at the request of plaintiff, that, while a physician and surgeon undertaking the treatment of a patient does not guarantee results or to effect a cure, yet he is required to possess and exercise that degree of skill and learning ordinarily possessed and exer-

cised by the members of his profession in good standing practicing in similar localities, and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment in the treatment of the case. In this connection you are further instructed that the test of professional skill and learning, as applied to Dr. Hardin in this case, is the same as is hereinabove defined, and he was required by law to exercise reasonable care and diligence in the treatment of the case. Now, bearing in mind the above instructions, you are further instructed that if you find that Dr. Hardin did not possess the requisite degree of professional skill, or if he failed to exercise the care and diligence required of him in the treatment of the case, and if you further find that, on account of such lack of skill upon the part of Dr. Hardin, if any, or if' on account of the failure to exercise the care and diligence required of him, if any, plaintiff's wife received injuries which she otherwise would not have received, and in consequence thereof suffered physical and mental pain which she otherwise would not have suffered, then, if you so find and believe, plaintiff is entitled to recover of defendant damages for such injuries so received by his wife, if any." The giving of the foregoing charges mentioned and the refusal of appellant's said special charge is assigned as error.

The contention of appellant, in substance, is that under the facts in this case it was the duty of appellee, in abandoning the treatment of appellant's wife and sending a substitute to treat her, to select a physician possessing that degree of professional skill and learning ordinarily possessed by physicians in good standing, practicing in similar localities, and that appellee would be primarily liable in damages for any injury proximately resulting from a breach of such duty, regardless of the degree of care used in making such selection of the substitute physician, and would be so liable for any injury received by the patient proximately resulting from the negligence of the substitute physician.

On the other hand, appellee contends that the duty, which a physician in sending a substitute physician in his stead, owes to a patient is to exercise ordinary care to furnish a physician possessing that degree of skill and ability as is usually possessed by physicians engaged in the practice of medicine in the locality where the patient resides, and is not liable for injuries resulting from the want of care, skill, and diligence on the part of the substitute physician.

The foregoing statement of the charges given and refused and the contentions of the respective parties, shows the issue of law involved; and the material facts, in the light of which the issue must be decided, are practically uncontroverted. Appellee con-

tracted to wait upon and treat appellant's wife in confinement. Appellant's wife was taken sick about 10 o'clock at night February 5, 1911, at his home seven miles distant from the doctor's home, and appellee was notified and requested to call to see her. This appellee did, and upon examination of Mrs. Lee, which was about 1 or 2 o'clock at night, announced that her pains were false ones; that he was not needed at present, and would go home and return when needed; that he did not think he would be needed before noon of the next day. Before leaving appellee administered to ·the patient a dose of medicine to relieve the pains with which she was then suffering, advised appellant of the symptoms that would indicate the necessity of calling him again, and said "phone me at my residence if you need me before 9 o'clock, and at my office after 9 o'clock, and I will come right out." After appellee returned home and about 8 o'clock that morning, appellant called him at his residence over the phone and· stated, "This is Lee at Vickery, where you were last night," and, "I think, Doc, it is time for you to be here. My wife is suffering terribly." Appellee replied that he could not come, that he would have to send another doctor; that he and several other men had a suit pending against them in Ft. Worth; that he (appellee) had been notified the suit would be called that day; that the other men were to go to Ft. Worth and notify him by phone when he was needed· so he could go over; but it did not become necessary, and he did not go to Ft. Worth. Appellee states as further reasons why he did not return to treat appellant's wife that the day in question was an exceptionally busy day with him, .and that he had several patients in the city of Dallas to visit. Dr. Hardin, a young physician of two or three years' experience, was sent by appellee to wait upon appellant's wife. Appellant testified that, when he requested appellee to return to attend his wife about 8 o'clock in the morning, appellee said: "I have got important business that I have got to attend to and I will send my partner." He further testified that Dr. Hardin came out on the interurban car, reaching the bedside of his wife about 10 o'clock a. m., and that he asked him if he was appellee's partner, and that Dr. Hardin replied that he was; that he, appellant, was not acquainted with Dr. Hardin at that time and had never heard of him before. Appellee testified that when appellant phoned him he told appellant that he would have to send another man, and that appellant said to send him in a hurry; that he (appellee) then phoned Dr. Hardin and told him to catch the first interurban car that passed his house; that he stated to Dr. Hardin that it was a partnership case; "that he and I would attend to it together;" that he wanted him (Dr. Hardin) to go out to appellant's and look after it, and, if he

needed any help or anything went wrong, to notify him (appellee), and that he would either come or send some one to assist him, and he told Dr. Hardin that he' (appellee) expected to take care of the case. He further stated that he would not say that "when Mr. Lee phoned me and told me to hurry out that his wife was suffering great pain, that I told him I would send my partner, that I could not come, I do not remember I said that or not. I told him I would send a good doctor. I have no partner." While there is testimony to the effect that Dr. Hardin's reputation as a physician was good and that he was competent, yet there is also testimony tending to show that from inexperience or lack of that degree of skill and ability, usually possessed by physicians engaged in the general practice of medicine in the city of Dallas and vicinity, on the part of Dr. Hardin, appellant's wife was injured in the delivery of her child substantially and to the extent as is alleged in appellant's petition.

[2] What was the measure of appellee's duty under the facts in furnishing Dr. Hardin to attend appellant's wife? It seems to be the settled rule that, where a common carrier is compelled by law or assumes to furnish a surgeon or physician to attend upon an injured passenger, the duty devolved upon it is to furnish a competent one, and if this is done the carrier is not liable for any malpractice or neglect upon the part of such physician. Railway Co. v. Scott, 18 Tex. Civ. App. 321, 44 S. W. 589, and cases there cited. So a person or corporation employing a physician who, by the direction of such person or corporation, renders gratuitous service is not liable, it seems, for his specific acts of negligence or malpractice, if ordinary care in his selection was exercised to secure the services of a competent and skillful physician. Ballard v. Railway Co., 144 Ky. 476, 139 S. W. 771.

[3] But a physician is responsible for an injury done to a patient through the want of proper skill and care in his apprentice or assistant.

[4] Likewise partners in the practice of medicine are all liable for an injury resulting from the negligence, either of omission or commission, of any one of the partners within the scope of their partnership business. 30 Cyc. p. 1581; Whittaker v. Collins, 34 Minn. 299, 25 N. W. 632, 57 Am. Rep. 55. The principle or theory upon which this holding is based is that partners in the practice of medicine are sureties for the faithful performance of their engagements by each of them. Hyrne v. Erwin, 23 S. C. 226, 55 Am. Rep. 15.

[5] It is also an established rule that a physician, responding to the call of a patient, thereby becomes engaged, in the absence of a special agreement, to attend to the case so long as it requires attention, unless he gives notice to the contrary or is discharged by the patient. 30 Cyc. p. 1573.

[6] He impliedly contracts that he possesses, and he is required to exercise that degree of knowledge, skill, and care which physicians practicing in similar localities ordinarily possess, but he does not impliedly warrant a cure, and can be held as a guarantor of success only in virtue of an express agreement. Ely v. Wilbur, 49 N. J. Law, 685, 10 Atl. 358, 441, 60 Am. Rep. 668; Grindle v. Rush, 7 Ohio, 123, pt. 2.

[7] If he makes provision for the attendance of a competent physician upon his patient, he may leave temporarily, but for the unwarranted abandonment of a case at a critical period resulting in increased pain and suffering on the part of the patient he will be held liable in damages. 30 Cyc. p. 1573; Lathrope v. Flood (Cal.) 63 Pac. 1007; Barbour v. Martin, 62 Me. 536. In the last case cited it is said, in effect, that a physician who leaves a patient in a critical stage of the disease, without reason or sufficient notice to procure another medical attendant, is guilty of a culpable dereliction of duty, and is liable therefor. The foregoing general rules seem to be well established, but for an express declaration upon the precise question presented in the instant case we have looked in vain. We are of the opinion, however, that, even though it should be conceded that common carriers in furnishing a physician to treat injured passengers, etc., and persons rendering gratuitous services in employing a physician to attend upon a sick or injured person are only required to exercise ordinary care to select a skillful and competent physician, yet, under the facts of this case, the duty of appellee to furnish appellant a physician to attend upon his wife, possessing that degree of knowledge, skill, and care which physicians practicing in the city of Dallas and vicinity possessed, was absolute. If it can be said that Dr. Hardin was not an assistant of appellee in the treatment of appellant's wife within the meaning of that term as used in the authorities cited, and was not a general partner of appellee in the practice of medicine, yet that he was a special partner in the treatment of appellant's wife, or was acting under his employment to do so, cannot very well be gainsaid. According to the undisputed testimony, appellee did not absolutely abandon the treatment of appellant's wife, but contemplated further treatment of her in conjunction with Dr. Hardin, whom he had associated with him in the case. Appellee swore, in effect, that he engaged Dr. Hardin to wait upon appellant's wife during his enforced temporary absence, with the distinct understanding that it was a partnership case, and to be treated as such by both of them. Dr. Hardin was therefore as much a partner for the purposes of the particular case as he would have been under a regular partnership for the general practice of medicine in the com-

munity. But, whether Dr. Hardin may be termed a partner of appellee in the treatment of appellant's wife or not, still, appellee being a physician himself, and having by contract undertaken the treatment of Mrs. Lee, and having secured the services of Dr. Hardin to relieve himself of the necessity of attending her himself and to serve his own interests, appellee will not be heard to say that, in such case, the duty resting upon him in the selection of a substitute physician was simply that of ordinary care. It was clearly shown that at the time appellee declined to respond to appellant's call to attend his wife, and sent in his stead Dr. Hardin, Mrs. Lee was at a critical stage of her illness, and, under all the circumstances of this case, it was his duty, in sending a substitute to wait on appellant's wife to select a physician possessing that degree of knowledge, skill, and care which physicians practicing in similar localities ordinarily possess, and for a failure to perform this duty, if such failure resulted proximately in injury to appellant's wife, he would be primarily liable in damages. The evidence does not present a case where there had been an entire abandonment of the patient and sufficient notice thereof given to enable the patient to procure another medical attendant of his own selection. It results from what we have said that the trial court erred substantially as claimed by appellant, in giving the charges complained of under his first and second assignments of error, and in refusing to give his special charge quoted above, and which is made the basis of the fifth assignment.

The other assignments, except such as complain of rulings inconsistent with what we have said, do not, in our opinion, disclose reversible error.

[8] Whether the reasons given by appellee for his failure to attend Mrs. Lee in person when called by her husband on the morning of February 6, 1911, were sufficient to excuse him and justified the sending of a competent physician in his stead was, we are inclined to think, a question for the jury. Hence the special charge requested by appellant, to the effect that such reasons would not excuse or justify such course on the part of appellee, was properly refused.

[9] In reference to the complaint that the court erred in refusing, after permitting two expert witnesses offered by appellee to demonstrate by means of a manikin what, in their opinion, would have been the proper method of treating plaintiff's wife and in delivering her child, to permit appellant's expert witnesses to demonstrate or illustrate, by the use and manipulation of the manikin, what, in their opinion, was the correct method to be employed in the delivery of the child, it is sufficient to say this was a matter largely within the discretion of the trial court, and, while we may think a broader latitude

might properly have been given appellant in this investigation, still it does not appear that the limitation placed thereon was such an abuse of the court's discretion as would warrant this court in pronouncing it reversible error.

[10] Nor do we think the admission of the testimony complained of in the ninth assignment furnishes a ground for reversal. The bill of exceptions reserved to the court's ruling shows that more than one question was asked and objected to, and the assignment of error complains of them as a whole, upon the ground that the questions were leading and suggested the answer desired. Clearly some of the questions were not leading, and if either was leading objection to it on that ground should have been made and a specific assignment of error based thereon should have been presented in this court.

[11] We are further of the opinion that the court did not err in giving special charge No. 5, requested by appellee. Whether the appellant was under the influence of intoxicating liquors and exhibited a pistol in such a threatening manner towards Dr. Hardin while he was waiting upon appellant's wife as to alarm or excite Dr. Hardin to such an extent as that the same contributed to the failure, if any, of said doctor to use ordinary care and skill in the treatment of appellant's wife was an issue of fact made by the evidence, which should have been submitted to the jury for their determination, with instructions that an affirmative finding upon it entitled appellee to a verdict.

For the reasons indicated, appellant's motion for a new trial is granted, and the judgment of the court below is reversed, and the cause remanded for a new trial.