**TURNER v. STOKER.    (No. 200.)** *

(Court of Civil Appeals of Texas. Eastland. Dec. 3, 1926. Rehearing Denied Dec. 31, 1926.)

**1. Evidence ⟾471(1)—Witnesses may not state conclusions.**

Witnesses will not be allowed to state conclusions, but may only state facts and leave jury to arrive at conclusions deducible therefrom.

**2. Evidence ⟾474(1)—Nonexpert may not express opinion unless shown to be qualified from experience and knowledge.**

Nonexpert will not be permitted to express opinion unless it is shown that witness from experience and knowledge is qualified to so give his opinion, but rule does not apply to statement of fact.

---

⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 2, 1927.

3. **Evidence** ⟾498½—**Trial judge has large discretion in determining whether testimony comes within rule forbidding witness to state conclusions.**

Trial judge is permitted a great deal of discretion in determining whether testimony is statement of fact or opinion so as to come within rule forbidding witness to state conclusions.

4. **Evidence** ⟾471(35)—**Plaintiff's testimony in malpractice suit as to permanency of injury held admissible as statement of fact.**

In suit for damages from malpractice, plaintiff's testimony relative to injury to jaw being permanent *held* a statement of fact and permissible as part of testimony of nature and condition of injury.

5. **Appeal and error** ⟾1052(5)—**Verdict showing no damages were awarded for permanent injury held to show that improper testimony on permanency of injury was not harmful.**

$1,250 verdict in malpractice suit *held* to conclusively show that admitting plaintiff's testimony as to permanency of injury to jaw was not harmful, since amount showed that damages were not awarded for permanent injury.

6. **Appeal and error** ⟾1050(1)—**Admitting plaintiff's testimony of permanency of injury held not prejudicial error, when merely cumulative of physician's testimony thereon.**

Admitting plaintiff's testimony in malpractice suit as to permanency of injury *held* not prejudicial error, when merely cumulative of physician's testimony sufficient in itself on issue of permanency of injury.

7. **Evidence** ⟾537, 544—**Physician practicing since 1898 and graduate of medical college held sufficiently qualified as expert to testify to condition and result of injury.**

Physician shown to have practiced since 1898 and to have graduated from medical college in 1906 *held* sufficiently qualified as expert to testify to condition and result of injury.

8. **Evidence** ⟾536—**There is no distinction between doctors admitted to practice profession as test of qualification for expert opinion testimony.**

There is no distinction between doctors admitted and licensed under law to practice profession in state as test of qualification for giving expert opinion testimony.

9. **Evidence** ⟾538—**Physician need not have practiced or lived in community to qualify to give expert opinion in malpractice suit.**

Physician, in order to qualify for giving expert opinion testimony as to nature of injury in malpractice suit, need not have practiced or lived in community.

10. **Physicians and surgeons** ⟾14(4)—**Village doctor is not charged with same degree of care as doctor in large city.**

Village doctor is not charged with same degree of care in treatment of patients as is applied to doctor practicing in city with greater facilities.

11. **Physicians and surgeons** ⟾14(4)—**Physician is charged with exercise of care and skill exercised by physicians in similar communities.**

Physician is not chargeable with negligence or failure to use his best skill and ability, but only that skill generally exercised by physicians in same or similar communities.

12. **Physicians and surgeons** ⟾14(4)—**Physician is required to exercise skill and care used by physicians in similar locations.**

Physician is not insurer, but he impliedly contracts that he possesses, and he is required to use and exercise, that degree of skill and care which physician practicing in similar locations ordinarily possess.

13. **Physicians and surgeons** ⟾18(9)—**Doctor's negligence in failing to advise X-ray and discover broken bones held for jury.**

Evidence in malpractice suit, relative to doctor's negligence in failing to advise X-ray and discover broken bones, *held* sufficient for jury.

14. **Physicians and surgeons** ⟾18(10)—**Charge in malpractice suit on proximate cause held erroneous in failing to state anticipation was necessary element.**

Charge in malpractice suit on proximate cause *held* to constitute reversible error in omitting to state that foreseeableness or anticipation of injuries was necessary element.

15. **Negligence** ⟾59—**Proximate cause of injury is natural and probable consequence foreseen.**

In order to warrant finding that negligence or act not amounting to wanton wrong is proximate cause of injury, it must appear that injury was natural and probable consequence of negligent or wrongful act and should have been foreseen.

16. **Appeal and error** ⟾216(1)—**Request of special charge, embracing objection to given charge is unnecessary to secure review on appeal.**

Where objection is made to charge, it is unnecessary for party making objection to request special charge embracing objection to secure review on appeal.

Appeal from District Court, Throckmorton County; Bruce W. Bryant, Judge.

Suit by S. H. Stoker against C. A. Turner. Judgment for plaintiff, and motion for a new trial overruled, and defendant appeals. Reversed and remanded.

Goggans & Allison, of Breckenridge, for appellant.

Benson & Dean and Wm. E. Hawkins, all of Breckenridge, for appellee.

RIDGELL, J. The appellee, Stoker, brought this suit against appellant, Turner, to recover alleged damages claimed to have been suffered by appellee, plaintiff below, by reason of alleged malpractice on the part of appellant. Suit was filed in Stephens coun-

ty, and, upon plea of privilege being sustained, was transferred to Throckmorton county, Tex. By second amended original petition it was alleged that plaintiff was a farmer and stock raiser with limited education and experience in life, resided on a farm in the vicinity of Woodson, Tex., and that the appellant, Turner, was a practicing physician engaged in the general practice of his profession as a physician and surgeon in that vicinity, and holding himself out as skillful, qualified, and competent to practice.

It is alleged that in January, 1923, he, appellee, sustained injuries in a runaway accident whereby his left arm was bruised and dislocated, or both, and his left collar bone was bruised and broken, as well as his left jawbone, and from all of which he suffered intense bodily pain; that appellant was going to take charge of and treat said injuries and undertook to do so, both by express and implied agreement; that appellant carelessly and negligently failed and refused to diagnose and treat said injuries and hurts as was his professional duty; and that appellant was guilty of maltreatment of appellee and of malpractice upon him in the various particulars set forth at length in appellee's petition. It was alleged that as a direct and proximate result of appellant's maltreatment and malpractice, the appellee had suffered actual damages in the sum of $25,000 and punitory or exemplary in the sum of $25,000.

The appellant answered by general and special demurrers, general denial, and by special answer alleged that if appellee had suffered any injury and pain as approximately the result of the accident, they had been caused by and resulted from the acts of plaintiff himself, in that he did not permit the appellant to make a thorough examination of his injuries and had failed to follow instructions with regard to exercising his alleged injured arm and shoulder, and in regard to procuring an X-ray examination and further treatment.

The appellee replied to pleadings of defendant by demurrer and general denial of the allegations alleged.

Upon a trial of the cause, the court overruled the general demurrers and sustained certain special exceptions. At the conclusion of all the evidence in the case the defendant requested a peremptory instruction, which was overruled, and in response to the answers of the jury to special issues judgment was rendered in favor of appellee against appellant for the sum of $1,250, with interest. The appellant filed motion for a new trial, which was overruled, an appeal being perfected to this court.

The propositions of law made by appellant as raised by assignments will be disposed of in the order as appears material to the disposition of this appeal.

By first proposition appellant insists that prejudicial error was committed by the court in permitting appellee, Stoker, to testify "that he considered the injury to his jaw permanent." In the same connection by bill of exception it is shown that the witness was permitted to testify "that the injury would last all his life."

[1] It is urged here that said testimony was prejudicial and harmful and was a conclusion of fact made by a nonexpert witness not shown to be qualified to give his opinion as to the effect and extent of the injury. We recognize the general and well-established rule that witnesses will not be permitted to state conclusions, but will only be allowed to state the facts and leave to the jury to arrive at the conclusions deducible from the facts.

[2] It is also well established and a recognized rule that a nonexpert will not be permitted to express his opinion, unless it is shown and it appears that the witness from experience and knowledge is qualified to so give his opinion. Stowell v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 259 S. W. 311. If, however, the evidence is not a conclusion or opinion, but the statement of a fact, the rule has no application. In other words, a witness could expressly state that a person was blind, or that a limb was lost, and while in those cases it might be by strained construction insisted that the statements were conclusions and yet be such apparent or known fact that it would be folly and ridiculous to refuse the testimony by applying the rule of evidence that witnesses can only state facts and not conclusions. Any one would know if an eye was out or a finger was off that the injury would be permanent.

[3] It is difficult to determine just when the rule applies and find the dividing line between statement of facts and opinion of fact, and a great deal must and should be left to sound discretion of the trial court.

In the case of Weatherford M. W. & N. W. Ry. Co. v. White, 55 Tex. Civ. App. 32, 118 S. W. 799, the court says:

"By the third assignment of error, it is contended that the court erred in the admission of certain evidence. While it is the proper and correct practice for the witness to state the facts and let the jury draw the proper deductions arising therefrom, it could not be held, we think, in this case, under the evidence, that the question and answer complained of constitute reversible error. The answer of the witness was not a bare conclusion or belief not founded on facts or observed data, but was founded upon personally observed data. All the physicians agreed in their evidence that the appellee's left leg had become an inch shorter than the right. One of the physicians testifying for the appellee said: 'I think she will remain more or less crippled as long as she lives.' and on cross-examination by the appellant said, 'I do not think she will ever recover entirely.' The two other physicians do not say that the injury was not permanent. That her left leg was shorter than the other, and had become so from the injury was a fact within her

knowledge, and was an apparent and external injury. When she answered that she believed the injury was for life, she but stated a fact known as well to laymen as to experts. If a finger or hand is cut off, a layman could as well know that it would not grow back again, and that it would be an injury for life, as could a physician."

In the case of Abee v. Bargas (Tex. Civ. App.) 65 S. W. 489, a nonexpert witness was permitted to testify that plaintiff was paralyzed and could not speak. In the case of San Antonio Traction Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200, the witness was permitted to testify that the injured party was "all crippled up," and "that after [she] got up out of bed she could not lift anything" and "was always suffering pain"; that "after the accident she was not half the woman she was before."

In the case of Pecos & N. T. Ry. Co. v. Suitor (Tex. Civ. App.) 153 S. W. 185, the witness was permitted to testify that the injured party had an impediment in his walk. In the case of C., R. I. & G. Ry. Co. v. Evans (Tex. Civ. App.) 143 S. W. 966, the plaintiff, although not an expert, was permitted to testify that with his eyes in their present condition he could not pass a physical examination for section foreman.

In describing the accident the witness R. G. Stoker, testified:

"He was driving a mule team that ran away from him and run over a bunch of mesquite, and as the wagon went over he fell off and barrels of water he was hauling fell on him as he was thrown out."

The plaintiff testified that by reason of the runaway he sustained certain injuries; that he was hurt in the arm and shoulder and head and some gashes on eye, left eye."

[4, 5] Without further quoting the testimony it is undisputed that in the accident the plaintiff was seriously injured; his jaw was broken; and that at the time of the trial his face was distorted in appearance from his broken jawbone; his shoulder was stiff and he could not raise his arm; and that he was unable to lift his left hand above the point of the hip, which condition and situation was best known to plaintiff than any other person, and for the witness to testify as complained would not be a conclusion, but, as we view it, a statement of fact justifiable and permissible as a part of the testimony of the nature and condition of the injury. Anyhow the amount of the verdict in this case is conclusive that no harmful result was the outgrowth of the admission of said testimony. If the injury to the jaw and shoulder was permanent, certainly it could not be said that the jury in this case was awarding damages for such permanent injury. On the other hand, the testimony of the plaintiff was merely cumulative, for the permanency of the injury is proven by the testimony of Dr. Williams. Dr. Williams tes-

289 S.W.—13

tified "that plaintiff's jawbone was broken in two places; that the jawbone was shorter than the other; that the arm was in an ankylosed condition."

[6] Without reciting the testimony of Dr. Williams in further detail, it suffices to state that his testimony was sufficient in itself on the issue of permanency of the injuries. It is true that the testimony of Dr. Williams is attacked and his qualification as expert assailed, but we will discuss that under another assignment. We therefore conclude the court committed no prejudicial error in admitting the testimony of plaintiff as to the permanency of the injuries. Pecos & N. T. Ry. Co. v. Coffman, 56 Tex. Civ. App. 472, 121 S. W. 218; Wise v. Wabash R. Co. (Mo. App.) 115 S. W. 452. Anyhow same would be harmless, because the testimony of Dr. Williams was sufficient to support the finding of the jury as to the extent and effect of the injuries, and the assignment will, therefore, be overruled.

By propositions 2, 3, and 4, it is insisted that a physician and surgeon undertaking the treatment of personal injuries of a patient is not required to have or exercise the highest degree of skill possible, but is required to exercise only that degree of skill, learning, and care which are ordinarily possessed and exercised by other members of his profession in good standing, practicing in similar localities and under like and similar circumstances.

[7-10] It is insisted that the court should have given peremptory instruction. Appellant insists there is no competent evidence upon which to base a judgment; that the testimony of Dr. Williams was not admissible because it was not shown that he was practicing medicine in and near Woodson at the particular time in question or was familiar with the practice in same or similar communities; that Dr. Williams' testimony being the only testimony tending to show that appellant was not skillful, but negligent in treatment; that his requested instruction should have been given. Dr. Williams testified that he was practicing medicine and had been practicing in Texas since 1898, and that he had been in the Woodson community about a year and seven months; that he was a graduate April 30, 1906, from a physiomedical college located at Dallas; that he never saw plaintiff until the time of the trial; and that he made a very brief examination of his person. That examination was made about three years after the alleged injury. We think Dr. Williams qualified as an expert to testify as to the condition and result of the injuries to plaintiff, as he found same at the time of his examination. It is insisted in the first place that Dr. Williams did not qualify as a member of the same school of medicine practiced by Dr. Turner, or as a practicing physician in the Woodson community, to wit, on January 12, 1923, or as

having had any experience whatever in similar communities. We do not understand that our law recognizes or makes any distinction between doctors admitted and licensed under the law to practice the profession in Texas as a test of qualification. We do not understand that in order for Dr. Williams to testify that it would be necessary for him to practice or live in the Woodson community, but if he was qualified to testify as to the practice in same or similar communities he would be qualified to give expert opinion under the rule. As we view it, a doctor may practice his profession in some of the larger cities of our state and yet be sufficiently familiar and acquainted with the practice of the profession in the villages to qualify him to testify. If the rule went so far as to require that a doctor before being permitted to testify, or practice in similar communities, then in a case of negligence for malpractice, if he was the only doctor in the community familiar with practice, then the complaining party would be absolutely helpless. Of course we understand that the doctor practicing in the village and small communities does not have the opportunity and resources to give the same treatment and diagnosis as what we may call the city doctor. The village doctor must observe his patient by the candle and lamp light; he does not have the advantage of the X-ray and other instrumentalities that are afforded the doctor in the great cities with sanitariums, and of course the same treatment and degree of care would not be applied to a doctor practicing in the Woodson community as a city.

In this case the doctor had been practicing in this community about 19 months; he testified that if called upon in this kind of case he could with very little difficulty have discovered the broken jaw and the broken clavicle, that if the jaw had been properly set and if the arm had been properly treated it would not have been stiff, and that the treatment so outlined was the treatment of a skillful physician.

[11] The testimony shows that the appellant was called after the accident to attend to appellee; that the only thing he prescribed was "mentholatum and let nature take its course." He assured appellee that there were no broken bones, and when appellee paid appellant $50 for his services, appellant then admitted that the jaw was broken. The family doctor is one of the most confidential persons the public has to deal with. His responsibility is one of the greatest of professions. When we are sick or injured, we place our life in his hands, and his advice and treatment may mean life or death. It is quite natural that he should be required to exercise that degree of skill, learning, and care which are ordinarily possessed and exercised by other such members of his profession in good standing practicing in similar communities and under like or similar circumstances. He is not chargeable with negligence or failure to use his best skill and ability, but only that care and skill exercised generally by physicians in same or similar communities. Lee v. Moore (Tex. Civ. App.) 162 S. W. 440; Hales v. Raines, 146 Mo. App. 232, 130 S. W. 425; Burk v. Foster, 114 Ky. 20, 69 S. W. 1096, 59 L. R. A. 277, 1 Ann. Cas. 304; Hamilton v. Harris (Tex. Civ. App.) 223 S. W. 533.

[12] The physician is not an insurer and does not warrant a cure, but he impliedly contracts that he possesses and he is required to use and exercise that degree of skill and care which physicians practicing in similar locations ordinarily possess, but he does not impliedly warrant a cure and cannot be held as a guarantor only by virtue of an express agreement. Lee v. Moore, supra; Ely v. Wilbur, 49 N. J. Law, 685, 10 A. 358, 441, 60 Am. Rep. 668.

[13] While the appellant was not bound to diagnose carefully or know that which could not be seen, for many of our ailments are hidden, yet the fact that he did not advise an X-ray, did not discover the broken jawbone, and was guilty of other failures as detailed by the witness, was sufficient for the jury to conclude that he was negligent. The failure in this case to discover these injuries —to give proper advice and treatment—may as testified leave the appellee a disfigured and injured man for life. There is other evidence without further recitation supporting the finding of the negligence. There is no profession that has advanced further than the medical. Too much could not be said of the wonderful achievement of medical science. It is a compliment to that profession to know that men have given their lives in research to find a cure for the different diseases of the race. A great doctor gave his life in discovering a serum for typhoid fever; others have given their lives and service in aid of science; and the advance in the treatment and cure of ailments seems also miraculous. It is no wonder, then, the confidence and faith of a people in the doctor, and it is but reasonable that they should receive that treatment afforded in the same or like communities.

The several propositions of appellant involve in substance the same attack on this judgment, and that is the competency and sufficiency of the testimony. The appellant offered no testimony, and our inquiry is limited as raised by these propositions to the competency of plaintiff's testimony. It is our conclusion that the testimony of Dr. Williams was properly admitted, and, there being sufficient evidence of negligence, the court did not err in refusing peremptory instruction. Upon another trial, the experience and practice of Dr. Williams might be more fully developed, but the treatment and diagnosis for broken jaw and dislocated shoulder would seem to be near the same in any community.

[14] Appellee by his twelfth proposition challenges the correctness of the court's charge on proximate cause. The trial court defined proximate cause as follows:

"Proximate cause is that which, in a natural and continuous sequence, unbroken by any new independent cause, produces a state or condition, and without which such state or condition would not have occurred."

[15] The appellant made timely objection to said charge, which was overruled by the court, but no charge correcting the alleged error was offered by appellant. The charge as given is insufficient and incorrect. The definition of proximate cause is very well settled in this state. In the case of T. & P. R. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, the Supreme Court of this state quoted the following definition as a correct statement of the doctrine.

"In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

The omission from this charge of the doctrine "that foreseeableness or anticipating of injury is a necessary element to proximate cause" is such a fatal omission as will require a reversal of this cause. Dallas Ry. Co. v. Warlick et al. (Tex. Com. App.) 285 S. W. 302; S. A. & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S. W. 354.

Under the facts in this case, the issue of proximate cause was a material issue. It was further recognized as an issue by the charge of the court and by appellee's acquiescence in the charge. It follows that if the issue of proximate cause was in the case and it was incumbent upon the court under the facts to submit that issue, the failure of the court to define same in a proper charge and the omission of the doctrine as stated was prejudicial to the rights of appellant. Of course, if as a matter of law there was no proximate cause in the case, then the failure of the court to give a correct definition would not be prejudicial error, but since proximate cause is in the case, the failure as stated compels us to sustain the assignment.

[16] The only answer to error in defining proximate cause made by appellee is that, the appellant having failed to ask a special requested charge, that the matter is waived and that appellant cannot avail himself of same by reason of the omission to make request. The appellee cites a number of authorities, which was the rule in this state, until our Supreme Court in the case of G., C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, announced, and it is now the law, that it is unnecessary where objection is made to the charge for the party to request a special charge embracing the objections.

We therefore, following the Conley Case, supra, hold that appellant did not prejudice his rights by failure to offer a special charge defining proximate cause in line with his objections to the charge.

On account of the error in the charge of the court, we are required to reverse and remand this cause, and it is so ordered.