CHICAGO, R. I. & G. RY. CO. v. EVANS.†

(Court of Civil Appeals of Texas. Dallas. Jan. 20, 1912. Rehearing Denied Feb. 10, 1912.)

1. MASTER AND SERVANT (§ 291*)—ACTIONS FOR INJURIES — EVIDENCE — WEIGHT AND SUFFICIENCY.

In an action by a section foreman for injuries to his eyes, claimed to have been received while using a track drill, evidence *held* insufficient to raise any issue whether he was injured while cutting rails with a chisel or spike and maul, and hence a charge that the undisputed evidence showed that the injuries were received while plaintiff was using a track drill furnished by defendant was justified.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

2. TRIAL (§ 191*) — ACTIONS FOR INJURIES— INSTRUCTIONS.

A charge that if the jury found that the defendant was guilty of negligence in failing

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

to furnish its servant with a track drill which was in a reasonably safe condition for use and found other facts as specified, their verdict should be for the servant, is not subject to the criticism that it leaves to the jury only the question whether it was negligence to furnish an unsafe track drill, and takes from them the question whether the track drill was actually unsafe.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–435; Dec. Dig. § 191.*]

3. TRIAL (§ 253*) — ACTIONS FOR INJURIES—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

A charge to find for plaintiff if defendant was found negligent in furnishing its servant with an unsafe track drill, and it should be found that a person of ordinary care, upon being furnished such a drill, would have continued in defendant's service, does not take from the jury the question of contributory negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

4. EVIDENCE (§ 471*)—OPINIONS—STATEMENT OF FACT.

A plaintiff suing for personal injuries, although not an expert, may testify that with his eyes in their present condition he could not pass a physical examination for section foreman, since it calls for a statement of fact as to his physical condition.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. MASTER AND SERVANT (§§ 276, 278*)—ACTIONS FOR INJURIES—EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action by a section foreman for personal injuries, evidence *held* to sustain a finding that the defendant was negligent in failing to furnish plaintiff a reasonably safe track drill, and that such negligence was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954–972; Dec. Dig. §§ 276, 278.*]

6. MASTER AND SERVANT (§ 281*)—ACTIONS FOR INJURIES—EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action by a section foreman for injuries received through the use of a defective appliance, evidence *held* insufficient to show contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

7. NEGLIGENCE (§ 122*)—ACTIONS—BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.

Where plaintiff's pleadings and testimony do not show contributory negligence, the burden of showing such negligence is on the defendant if it has pleaded it as a defense.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 221–223, 229–234; Dec. Dig. § 122.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by S. P. Evans against the Chicago, Rock Island & Gulf Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

N. H. Lassiter, Robert Harrison, and Hill & Webb, for appellant. William Orr and Etheridge & McCormick, for appellee.

BOOKHOUT, J. This suit was brought by S. P. Evans against the Chicago, Rock Island & Gulf Railway Company on August 31, 1909, in the district court of Dallas county, Tex., to recover damages on account of personal injuries alleged to have resulted from the defendant's negligence. The plaintiff pleaded that he was employed by the defendant as a section foreman, and that while engaged in boring holes in steel rails with a track drill, which he alleged was defective, steel filings caused by this boring fell into his eyes, and permanently injured one of them. It was alleged that the drill was defective, in that the latch controlling a cogwheel in it had been broken off, and the plaintiff was required to use in lieu of this missing latch a pick or other similar instrument to control the cogwheel, and that he was using a pick at the time of the injury; that, in order to operate the drill in this way, it was necessary for him to sit down by the side of the drill, bringing his face close to the drill bit, and that thus the steel filings found their way into his eyes. The defendant pleaded a general denial, and specially that if steel dust or slivers got into the plaintiff's eyes, as alleged, they were blown there by the wind, and that this was not the proximate result of any negligence on the defendant's part, and it was not responsible for an injury so caused; also, that the plaintiff was an experienced section foreman and thoroughly understood his work, and that if the track drill he was using was in any way defective, which was, however, denied, this defect was patent, open, and obvious to the plaintiff and known by him during the time that he used it, and that it was unknown to the defendant, and no notice was given to the defendant of any such defective condition; and that the plaintiff assumed the risk of the injury complained of. It was further pleaded that the injury was the result of a danger ordinarily incident to the character of work the plaintiff was engaged in, and that for this reason he assumed the risk; further, that the plaintiff's own negligence contributed to his injury, in that he knew, or by the use of ordinary care would have known, that small particles of steel or iron would be thrown off from the rail while this work of drilling was going on, and that he took no precaution to avoid injury from this, but, on the other hand, voluntarily took a position of danger, to wit, that he placed his face very close to where the dust and metal slivers necessarily incident to the work of drilling were flying, and took no precaution to protect himself therefrom; also that if, as he claims, there was a defect in the track drill, he was well aware of this, and if it was dangerous to do this work with this sort of drill, and as the plaintiff was doing

it, he was negligent in failing to give any notice to the defendant of this condition, and to take any precautions to protect himself. On a trial of the case a verdict was returned in the plaintiff's favor for the sum of $3,250. Plaintiff entered a remittitur for $115, and judgment was entered for the balance.

There was testimony that plaintiff had been a section laborer and section foreman for 16 years, and had been employed by the defendant as a section foreman at Irving for a year. On the date of the alleged injury he was laying a side track near the waterworks in Dallas, and to do that work it was necessary to drill new holes in some of the rails. He wrote to the roadmaster for a drill, which was sent him. This drill is built on a frame like an ordinary grindstone, with a lever on each side. At the bottom it is connected with two cogwheels, and there is supposed to be a latch on the cogwheels to feed the drill. The latch was gone from the drill he received, and there was a card on the drill on which was written: "To use this drill you will have to use some sharp instrument to get the same pressure against the rail. The latch is lost." The plaintiff had operated such drills as this in good condition, but had never operated one in bad condition. When he began to operate it, he and the roadmaster set it up, and it would not work at first. Then the roadmaster suggested that he use some sharp instrument to feed it, and he used the point of a pick. The roadmaster turned it a few minutes in the beginning of the work, and then the plaintiff put two of his men to work at it. The work was done in this way: The machine was turned, and at every revolution of the machine the cogwheel would be pinched up with the pick, so that the bit would turn. It was necessary to readjust the pick at every revolution, so as to keep the pressure against the rail. The plaintiff fed the drill with this pick about three hours. To do this work as they were doing it, the men had to sit down on the ties beside the drill, which would throw their faces within about 18 or 20 inches of the drill. There was no necessity of looking where the drill bit was working further than to keep the bit oiled. There was no way to operate the machine except to use some substitute for the missing latch. During the three hours that plaintiff was at work he did not notice any metal filings until about the time they were through work, when his eyes commenced hurting him. He did not feel anything or see anything getting into his eyes, and the irritation was the first notice he had that there was any trouble. He went to a doctor, and three tiny slivers were taken from his left eye. After this, he was under treatment of an oculist for two months, and suffered greatly, and, when he was dismissed, there was hardly half sight left in the injured eye. On cross-examination he testified that he had been using track drills for 10 or 12 years, and that the drill in question was an ordinary standard track drill of the kind ordinarily used by railroads. It was about 4 feet high, and the upright part of it sets about 20 inches from the rail. The cogwheel that controls it is on the back of the shafting that runs from the drill, and is about 18 inches from the rail. The drill is turned by a wheel with handles on it, and as this wheel revolves it causes the cogwheel to notch over a cog at a time. The men turning it stand one on each side of it and within 18 or 20 inches of the rail, and stand upright in feeding it. The plaintiff sat beside it, and sort of between the rail and the man who was turning it. The pick he was using was 12 or 14 inches long. He attended to putting the oil on the bit, and sat where he did in order to do that. When he would oil it, he would reach over and get close to it, so that he would be certain to get the oil right on the bit. This would put him within 10 or 12 inches of the bit, and this would have put him in this same proximity even if he had not been feeding the drill. If the drill had been perfect, he would still have had to oil the bit, and get just as close to it as he did. The drill was stopped whenever he oiled the bit. On rebuttal George Kerens testified that he had formerly been a section foreman for the defendant, but at the time of the trial was farming; that he used the drill some on the day of the alleged accident; and that the latch was no good, and would not keep the bit against the rail, and he had to feed it with the point of a pick in order to keep the drill against the rail. In doing this, a man's face would be about 2½ to 3 feet from the bit. In oiling the bit while feeding, it was necessary to bring his eyes within about 18 inches of the bit. There was some wind on the day in question. A wind is liable to pick up small particles of steel, and in cutting steel rails small particles are liable to fly off, and particles that are lying on the track are liable to be picked up by the wind; also, that some trains passed while they were working with that drill; that passing trains make a suction and carry up steel dust and dust and sand, and a lot of it flies at such a time.

[1] The first assignment assigns as error the first paragraph of the court's charge, reading as follows: "You are instructed that the undisputed evidence shows that on March 11, 1909, the plaintiff was the servant of the defendant, which was then a corporation operating a railroad, and that the defendant furnished to the plaintiff an appliance known as a track drill, and that the plaintiff, while engaged in working with said appliance, received an injury in one of his eyes." The proposition presented is:

The charge is error because it does not appear from the undisputed testimony that the plaintiff received the injury to his eye while working with the track drill, but, on the contrary, the testimony justifies the conclusion that his injury may have been received, and probably was received, while he was assisting in cutting rails in other ways than with the drill, or that the suction of a passing train blew the slivers into his eye when he was not working with the drill, and therefore the charge is on the weight of evidence. The only evidence tending in the least to show that plaintiff, Evans, assisted in putting in ties and cutting rails on the morning in question, was the statement of roadmaster Harrison, as follows: "Mr. Evans was putting in some ties·that morning before doing this drill work, and was cutting some rails with an ordinary track chisel or with a spike and maul. I think he was around where those rails were being cut. In cutting rails in that way there is more danger from flying slivers of steel than if the rails are cut with a drill." Again he says: "*I think he was around where those rails were being cut.* There were eight or ten laborers working there that day besides the two section foremen. I do not remember their names. *I do not have any positive recollection of Mr. Evans being engaged in the work of cutting any of the rails that day, except that I helped lift them and it took all the men we had to break some of them.*" No other witness testified that Evans assisted in cutting or putting steel rails in the track on that day. This evidence only inferentially tended to show that Evans on the morning in question was engaged in cutting rails, and it was not sufficient to raise the issue that plaintiff received the injury to his eye while cutting rails. There is no error in the first paragraph of the court's charge.

In addition to the main charge the court, at the request of defendant, submitted numerous special charges covering every defense specially pleaded by it.

[2, 3] The second assignment complains of the fourth paragraph of the court's charge, which reads as follows: "If from the evidence you should find that the defendant was guilty of negligence in failing to furnish plaintiff with a track drill which was in a reasonably safe condition for use, and that such negligence, if any, was the direct and proximate cause of the injuries sustained by the plaintiff, and that a person of ordinary care upon being furnished with the said track drill which was furnished to the plaintiff would have continued in the service of the defendant with the knowledge of the defect, if any, in said track drill, and the danger, if any, in operating said track drill, then your verdict should be for the plaintiff, and, if you so find, you will assess his damages in accordance with the directions hereinafter given you with reference thereto." It is insisted that this charge is calculated to lead the jury to believe that the court was of the opinion that the defendant failed to furnish the plaintiff with a reasonably safe track drill, and that the jury should say only whether the defendant was guilty of negligence in so doing. The charge is not subject to the criticism insisted on. The portion of the charge complained of requires the jury to find that the defendant was guilty or negligence in failing to furnish plaintiff with a track drill that was not in a reasonably safe condition for use. The charge defined "negligence." The negligence alleged in the plaintiff's petition was in furnishing an unsafe track drill. The court did not assume that the track drill was defective, but submitted the question whether the track drill was defective. The criticism of this charge, that it tends to lead the jury to believe that the court in assuming that the defendant failed to furnish the plaintiff a reasonably safe track drill, is without merit. Again, it is contended that the charge takes from the jury the issue of the plaintiff's contributory negligence in putting his face in a dangerous position and failing to guard against or protect himself from the danger of steel particles flying into his eyes, and in failing to take any steps to procure a better drill, but directs a verdict in the plaintiff's favor if the defendant was guilty of negligence, and if a person of ordinary care would have continued in the defendant's service with knowledge of the danger of operating the track drill. This contention is not sound. The charge fully submitted the issue of contributory negligence, and, if it was not as full as appellant desired, then it was the result of its own omission.

[4] Error is assigned to the action of the court in the admission of the testimony of S. P. Evans in reference to his eyesight. While testifying in his own behalf he was asked to tell the jury "what, if any, qualifications exist for a section foreman in the way of a physical examination, if you know. Answer: A man going out now to be a section foreman, he has got to stand a physical examination. Of course, if he has not got good eyes or hearing, if you have a defective eye, it would turn down your examination. Question: You are familiar with those examinations, are you? Answer: Yes, sir. Question: State to the jury, with your eye in the condition it now is, and has been, well, since March 11, 1909, could you stand the examination as section foreman? Answer: No sir." The objections to these answers that the witness is not shown to be an expert in the examination of the eye or that he had had any examination of the eye since the alleged injury were overruled, and the witness answered, "No, sir." This testimony was competent, and was the statement of a fact touching plaintiff's physical condition, and was properly admitted.

The plaintiff having entered a remittitur to the testimony in reference to the medical bill of Dr. Cary, the fourth assignment need not be considered.

[5] The fifth assignment contends that the court erred in overruling defendant's motion for a new trial because the verdict of the jury is contrary to the law and the evidence and not supported by the evidence, in that the evidence fails to show that the defendant was guilty of negligence proximately causing the plaintiff's injury. This assignment is not sustained. There was testimony that the defendant furnished the plaintiff with a track drill, one of the essential parts of which was broken off, and the roadmaster set plaintiff to work with this track drill, using a pick as a substitute for the missing part, the use of which substitute necessarily caused plaintiff to assume a position while the drill was in operation which brought his eye nearer to the point of contact between the drill bit and the steel rail than would have been necessary had the drill been perfect; that the operation of the drill in this manner caused an additional and much greater pressure to be put on the bit; and that this pressure had the tendency to cause steel particles to fly off from the point of contact between the bit and the rail. The plaintiff worked with the track drill about three hours, and at the end of that time found his eye wounded, and from his eye immediately thereafter the doctor took out three steel slivers or particles. From all the facts the jury were warranted in finding both negligence and proximate cause.

[6] The sixth assignment of error is that the court erred in overruling defendant's motion for a new trial, because, as was complained in that motion, the court should have sustained the defendant's motion to return a verdict for the defendant on the ground that the testimony showed that the plaintiff was guilty of contributory negligence proximately contributing to cause the accident. The court did not err in overruling defendant's motion for a new trial because there was no evidence in the record that appellee was guilty of negligence proximately contributing to the accident and injuries.

[7] Plaintiff's case, as stated in his pleadings, does not imply contributory negligence, and, when such negligence is not indicated by plaintiff's testimony, the burden of proving the same is on defendant where he has pleaded contributory negligence as a defense.

Finding no reversible error in the record, the judgment is affirmed.