## UNITED EMPLOYERS CASUALTY CO. v. DANIELS.

### No. 3628.

Court of Civil Appeals of Texas. Beaumont.

July 2, 1940.

Rehearing Denied July 24, 1940.

Will R. Saunders and Henry D. Akin, both of Dallas, for plaintiff in error.

Collins, Williams, Hatchell & Garrison, of Lufkin, for defendant in error.

COMBS, Justice.

This is a compensation insurance case. The Insurance Company has brought up an enormous record containing hundreds of "objections" "exceptions", etc., (a matter to which we shall refer again in the course of this opinion), but there was in fact but one issue touching the merits of the case and that was the extent of the plaintiff's injury. Plaintiff was struck in the back by an empty freight car which knocked him to the ground and a wheel of the car passed over his left foot. In falling, his foot being caught under the wheel, his left leg was twisted and injured, and certain bones of his foot and ankle were

fractured, producing ankylosis, adhesions of the tissues, and according to his evidence, he is totally and permanently incapacitated. The jury so found and fixed his compensation at $3,448.67, payable in a lump sum. The Insurance Company has appealed by writ of error. We will refer to the appellee as plaintiff, the position he occupied in the trial court, and to the plaintiff in error as the Insurance Company.

## Opinion.

By its first proposition the Insurance Company complains of the action of the trial court in overruling its general demurrer. Its contention on this point is that the plaintiff in his petition showed affirmatively that his claim was not filed with the Industrial Accident Board within six months after the date of the injury and he did not allege or attempt to allege any good cause for failure to file his claim within the six months as provided by the statute. Vernon's Ann.Civ.Stat. Article 8307, Sec. 4a. The assignment is without merit. The plaintiff alleged that he was injured July 2, 1938, and that "plaintiff within six months after the occurrence of such accident * * * duly made and filed with the Industrial Accident Board of Texas, his claim in writing for compensation * * *." He did also allege that the claim was filed "on or about the 11th day of January, 1939", while the six months' period expired January 3, 1939. But such allegation did not negative the affirmative allegation that the claim was filed within six months. The pleading as a whole avers the filing of the claim within due time. This is certainly true as against a general demurrer. Fuqua v. Mapes, Tex. Com.App., 57 S.W.2d 97; Davies v. Texas Employers' Ins. Ass'n, Tex.Com.App., 16 S.W.2d 524. We will add in this connection that the record affirmatively shows that plaintiff actually filed his claim August 18, 1938, only about a month and a half after the injury. So the Insurance Company here urges a pure legal technicality, which the undisputed facts show it would be a travesty on justice to sustain.

By propositions 2 and 3, the Insurance Company challenges the sufficiency of the evidence to support the jury's findings of total permanent incapacity. These assignments are also overruled. It is not questioned that plaintiff's foot and ankle were crushed, producing ankylosis. He testified at the time of the trial that he suffered severe pains in his back and left leg, and he was on crutches and unable to do any form of manual labor. His medical witness, Dr. Denman, testified from his examination of him, and from X-ray pictures, that because of injuries to bones, muscles, and tendons of the foot and leg, plaintiff had lost 90% of the movement of the foot and ankle; that because of adhesions of muscles and tendons, the foot and ankle had become drawn until the foot could not be placed flat on the floor, and that the plaintiff could not walk or stand upon it without severe pain. He expressed it as his opinion that the plaintiff would never be able to do any form of manual labor, the only work which he is qualified to do. The Insurance Company's medical witness, Dr. Barkley, estimated plaintiff's loss of movement of the foot and ankle at twenty to thirty per cent, and expressed the opinion that plaintiff's condition would improve if he would use the foot and leg. But on cross-examination, he was asked: "Q. Now if this man came to you for examination, you would not pass him as being fit to go to work, would you, to do manual labor? A. No, Sir."

The record discloses that plaintiff went to Houston at the instance of the Insurance Company and was examined by its Dr. Thomas. Also, that Dr. Pearson, of Beaumont, examined him in Woodville during the trial of this case at the request of the Insurance Company. Yet, neither of these doctors was called as a witness. This brief recital of the evidence is sufficient, we think, to show that the jury's findings of total permanent incapacity have ample support.

As we understand the Insurance Company's contention on this point, it concedes the sufficiency of the evidence if Dr. Denman's testimony be considered. But it insists that his testimony was inadmissible and should have been excluded on its objection to the effect that Dr. Denman examined the plaintiff for the purpose of testifying in this case, and based his opinion of total permanent incapacity partly on subjective symptoms and case history related to him by the plaintiff. The point is not well taken. It is true that a well recognized and wholesome rule of evidence excludes the opinion of a doctor as to the extent of incapacity when the same is predicated in whole or in part upon the self-serving statements of the injured party made during examination conducted for

the purpose of enabling the doctor to testify. Texas Employers' Ins. Ass'n v. Wallace, Tex.Civ.App., 70 S.W.2d 832, and authorities cited; Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 93 S. W.2d 1180; Republic Underwriters v. Lewis, Tex.Civ.App., 106 S.W.2d 1113. But the facts of the present case do not invoke that rule. Dr. Denman examined the plaintiff first in January, 1939, and twice afterwards before the trial of this case in April. He testified positively that plaintiff came to him for examination and treatment. He stated that he did not prescribe any treatment for the plaintiff because he did not know of any treatment that would improve his condition. In that connection he testified: "I don't know of any treatment for this condition, where you have a complete crushing injury to the foot or small bones and ankylosis had already taken place. There is no doctor living, I don't think, that could do him any good. * * * In my opinion he has reached his maximum recovery."

Dr. Barclay corroborated Dr. Denman's opinion that medical treatment would not improve plaintiff's condition.

■■ There are several other propositions attempting to present purely technical matters. We are convinced that none of them presents any reversible error if they should be considered. But we do not consider the propositions for the reason that the matters complained of were never "distinctly presented to the trial court," nor do the assignments distinctly set forth the ground of error for consideration of this court as required by Rule 24. We have become accustomed to reviewing voluminous records, the natural result of the present rules of procedure, but never before have we seen the record of what ought to be a simple compensation case loaded with such an interminable mass of wholly unnecessary and irrelevant matter. As we have already stated, the only seriously contested question in this case was the extent of plaintiff's injury. Yet the transcript brought here contains 292 pages. Of that number 46 pages are consumed by papers filed by the plaintiff and the orders of the trial court. The balance, 246 pages, consists of matter filed by the Insurance Company. The Insurance Company's "objections" and "exceptions" to the court's charge consists of 169 separate divisions, many of them subdivided into a number of subdivisions numbered "a",

"b", etc. These objections cover 74 pages of the transcript. The able and patient trial judge, perhaps out of an abundance of precaution in view of the multitude of "objections", submitted 56 special "issues" to the jury. The Insurance Company's amended motion for new trial contained 630 "grounds" of error, and consumes 142 pages of the transcript. Most of the "exceptions", "objections" and "grounds" of error were simply repetitions of the same stock objections to each and every issue submitted, including defensive issues. Obviously, they could not have been filed with any intent of pointing out to the trial court matters which counsel believed were material to the preservation of the defendant's rights. To say that this great mass of meaningless objections was filed by counsel in the sincere belief that they bore some relation to securing a just and fair consideration of his client's case by judge and jury would be to impeach the intelligence of counsel. When one examines this record he can hardly escape the conclusion that counsel was not in fact attempting to call any error to the attention of the trial court with the view of having it corrected. Rather, the evident purpose was to conceal the meritorious objections, if any, with the hope of preserving in the obscurity of a mass of words some point of reversible error. This method of defense, which is all too prevalent in our trial practice, is analogous to that of the cuttle fish which, when confronted by an enemy, simply squirts great quantities of black fluid into the surrounding waters, and seeks to make its escape in a cloud of ink.

This criticism is not directed so much at counsel as it is toward a system of procedural rules which invites and encourages such practice. We can understand the position of a defense attorney, who, not without some reason, feels that technicalities often supply the chief means of defending his client against possible injustice. In recent years our courts have all but stripped themselves of their fact reviewing function and made decision of each case to turn more upon the observance or non-observance of procedural rules than upon inherent justice and substantive law. This is a serious situation striking at the very roots of our system of remedial justice. The trial of a lawsuit ought to be a sincere effort to get at the true facts and determine the rights of the parties in accordance with the principles of law and

justice. That such is not always the condition prevailing under existing rules is strikingly illustrated in this case. It is to be hoped that a system of procedure which produces the condition we see here will be remedied by the new rules which are to be promulgated shortly. It should certainly be possible to formulate common-sense rules which will permit a trial judge to submit such a case as this to the jury upon a few simple nonconfusing questions or issues. But we believe that our courts should not wait for new rules in order to discourage the practice of defense by confusion and concealment. The present condition has been brought about largely by court decisions, and it can to some extent at least be remedied in the same way. In this connection, we express our agreement with the holding of the Austin Court of Civil Appeals in Federal Underwriters Exchange v. Simpson, 137 S.W.2d 132, and Federal Underwriters Exchange v. Walker, 134 S.W.2d 388, 395. So far as this court is concerned, we shall do what we can, and will lend no encouragement to the "cuttle fish" system of trial practice.

The judgment of the trial court is affirmed.

Affirmed.