## TEXAS EMPLOYERS' INS. ASS'N v. LONG.

### No. 9439.

Court of Civil Appeals of Texas. Austin.
May 10, 1944.

Rehearing Denied May 31, 1944.

Wood & Wood and Coleman Gay, both of Austin, for appellant.

Hart & Brown, of Austin, for appellee.

BLAIR, Justice.

This is a workmen's compensation case. Appellee, Marshall D. Long, recovered judgment against appellant, Texas Employers' Insurance Association, for the lump sum payment of workmen's compensation for total and permanent disability. The accident by which he was injured occurred in the course of his employment with Davidson Sash & Door Company, as a carpenter's helper. He was working near a ramp on which other employees were pushing a dolly truck loaded with heavy counter tops. When the truck reached a point near appellee it overturned, and the counter tops fell on his back and left leg, the greater part falling on his leg, resulting in a comminuted fracture of the fibula, dislocation of the ankle, and a fracture of the tip end of the big bone or tibia; and resulting in injury to his nervous system and general health. The trial was to a jury on special issues, which

were answered favorably to appellee, and judgment was accordingly rendered for him.

Six points of error presented by appellant are as follows:

1. That the evidence is insufficient to support the compensation judgment for total permanent disability.

2. That over objection appellee was permitted to testify that he would not be able to perform labor in the future.

3. That there is no jury finding that appellee's disability would be permanent.

4. That no permanent disability was proved except to the leg.

5. That the average daily wage of $4, as found by the jury, was not supported by the evidence.

6. That the lump sum judgment was not supported by the evidence.

Neither of these contentions is sustained.

Points 1 and 4 relate to the question of the insufficiency of the evidence to support a compensation judgment for total permanent disability. The evidence supporting the judgment will be stated in substance.

Appellee was injured on August 18, 1942, at which time he was 42 years of age. He had an 8th grade education; had never been employed except at heavy manual labor, and had always been and was in good health at the time of his injury. Five doctors testified on the trial of the case as to the seriousness of the character of the fractures and injury to appellee's leg, and some of them testified as to the resulting injury to his nervous system and general health. The injury to his leg healed slowly; an open sore developed; and appellee was in the hospital three times over a period of several months for the treatment of his injury. When the case was tried, 15 months after the accident, appellee was still suffering 'from the injury to his leg and the resulting injury to his nervous system and general health. Appellant's doctor treated appellee from the time of his injury until February 1, 1943, when he dismissed him as being able to do light work. He testified that the X-ray taken at the time "showed union of all the fragments and good position of the bone with normal callous tissue formation"; that appellee has a "traumatic arthritis, or traumatic type of rheumatism, which I thought had probably been contributed to by his teeth." He further testified that his "teeth are clear"; and no evidence showed that appellee's teeth caused his rheumatic condition. This doctor further testified that appellee "had approximately 20% permanent partial disability as applied to the foot."

After appellee was dismissed by appellant's doctor, he went to a doctor of his own choosing, who treated him for the injury to his leg and resulting injury from February 1, 1943, until the date of the trial, November 9, 1943. He testified that at that time appellee was not in a condition to do any manual labor whatever, and had not been able to work during the entire time he had been treating him; that he was unable to estimate how long his total incapacity to do manual labor would continue; that the kind of injury suffered by appellee is a painful injury, especially since it involves the joint, and that symptomatically, taken in consideration with what appellee had told him about his condition, he was of the opinion that the injury had affected his general health, causing nervousness, irritability, nervous indigestion, loss of sleep, and loss of weight. This doctor estimated the disability of appellee's leg to be 65% of its normal movements or uses, and testified that as long as the leg was sore appellee would not be able to do any work; and "that he has been totally incapacitated to perform manual labor."

Appellant's doctor who made the X-ray pictures of appellee's leg from time to time, the last one being the day before the trial, testified that "considering the type of fracture, the progress has been favorable"; that "it is practically healed now as far as it will ever be healed"; and that "no bone that has been fractured as that is, or as that has been, can ever be the same as a bone that has not been fractured; but there is at the present time stable, substantial callous union of those comminuted fractures."

A doctor appointed by the court to examine appellee's leg testified that the ankle was swollen; showed some limitation of motion and some pain; that he considered "the result good considering the magnitude of the original injury," and estimated disability at 35% below normal use of the leg itself. He further testified that if the leg still pained appellee he could not work.

Another doctor appointed by the court testified that appellee's ankle was enlarged and was "swollen painfully" and that there was "deep scarring" on the leg; limitation of motion of the foot and ankle, and an "inversion or turning in of the ankle"; that appellee has "had a good deal of trouble in the bones and ankle, and the feet too from inflammatory reaction, and still has some"; that he was not able to work, and that he did not have the "slightest idea when he would be able to return to work"; and that witness was of the opinion that there existed 40% disability to the leg itself; and that by the fact that there was 40% disability to the leg itself did not mean that appellee was able to do any manual work. He further testified that with the kind of injury suffered by appellee, there was necessarily a great deal of pain; that pain is the natural physical condition which affects the general nervous condition and the general physical condition of the patient; and that it was a natural result of a painful injury of the kind suffered by appellee; that his nervous system would be affected, and that he would suffer such symptoms as loss of sleep, weight and appetite.

Appellee had been married 23 years at the time of his injury. His wife testified 'that he had never been sick, but had been in perfect health; that after the accident his general health became very poor; he lost 15 pounds in weight; was nervous and irritable; did not sleep at night, and had very little appetite. Appellee testified that at the time the entire load of heavy counter tops fell against him, he was hit in the back, up next to the shoulder; that the whole load was lying on him; the "biggest part of it was on my leg," and "some of it on my back"; that the shock rendered him numb and without sensation of pain until he was in an ambulance on the way to the hospital, when "it got to hurting awful bad"; and that at the hospital a bandage was placed on his shoulder and his leg was placed in a cast. When appellee took the stand, he showed his injured leg to the jury, and the facts showed that the fracture was still visible to the naked eye at the time of the trial; that the bone fragments which protruded from the rest of the bone structure could be felt when pointed out to the jury; the swollen character of the ankle, the scarring and the discoloration were still present at the time the leg was shown to the jury. Appellee testified that after several months he discontinued the use of crutches, but that he still had to use a cane, except to walk possibly a few feet across the room; that the pain was continuous in his leg and ankle; and that pain had never been out of it; that it was sore and stiff all the time; that he had muscular spasms at night in the calf of his leg, and would have to get out of bed every night; that he had pains in his back which he thought were caused by the strain from walking with a cane; that if he attempted to stand on his leg it became more painful than ever, and the swelling increased; that prior to the injury his health was good, he slept well and had a good appetite, and was strong physically; that since the accident and injury to his foot he has been "sore all over"; has been nervous and irritable; has lost 15 pounds in weight, and has very little appetite. He further testified, over objection, "In the present condition of the foot, no, I do not believe that I would be, unless something is done for it in some way that would help that foot out. In the present condition of it, I don't believe I would be able to do manual labor of any kind."

The jury found in answer to Special Issue No. 5 that "the injury to the (appellee's) left foot has affected and involved and will affect and involve parts of his body other than his left foot." This finding is fully supported by the foregoing evidence. The jury found in answer to Special Issue No. 1 that appellee "was totally disabled as the result of the injuries sustained by him." The instruction in connection with this issue properly defined "total disability." The jury found in answer to Special Issue No. 2 that the "injury sustained by (appellee) will be permanent." It is contended by appellant that in view of the fact that the permanency of "injury" instead of permanency of "disability" was submitted to and found by the jury, it could not be assumed that the jury intended to find, under either issue submitted, that the resultant injury to appellee's nervous system and general health was permanent; nor could it be assumed that the trial judge so found in support of the judgment for compensation for total permanent disability. It is further contended that if such a finding was in-

tended or could be assumed, that it has no support in the evidence.

No objection was made to the manner of submitting the aforementioned special issues to the jury. Special Issue No. 5 submitted the issue of recovery upon the ground that the injury to the leg and resulting injury to the nervous system and general health of appellee rendered him disabled to do manual labor. No objection was made to the issue, nor was any request made to submit the element of total permanent incapacity resulting therefrom. The whole theory of the case as tried was that the injury to appellee's leg and the resulting injury to his nervous system and general health rendered him totally and permanently disabled to do manual labor. The submission of the issue of permanent "injury" instead of permanent disability seems to have been inadvertently done. We are of the view that the "omitted unrequested element" as to permanent total disability must be assumed to have been found by the trial judge in support of the judgment, if the evidence sufficiently supports such finding. Rule 279, Texas Rules of Civil Procedure; Consolidated Underwriters v. Langley, Tex.Sup., 170 S.W.2d 463. Under the foregoing facts the injury to appellee was not confined to injury below the knee, or to specific injury to the foot. His injury to the foot and the resulting injury to his nervous system and general health is regarded as general injury rather than specific injury confined to the foot. Great American Indemnity Co. v. Sams, Tex.Sup., 176 S.W.2d 312. And we think the foregoing evidence sufficiently supports the finding and judgment for compensation for total permanent disability rendering appellee unable to perform manual labor. The Langley and Sams cases, supra, and the following cases present analogous, if not entirely similar, facts to the instant case, and sustain our conclusion as to the sufficiency of the evidence. United Employers' Casualty Co. v. Daniels, Tex.Civ.App., 142 S.W.2d 607; Texas Employers' Insurance Ass'n v. Hevolow, Tex.Civ.App., 136 S.W.2d 931, writ dismissed, correct judgment; Traders & General Insurance Co. v. Nunley, Tex.Civ.App., 82 S.W.2d 715; Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68, writ dismissed; Oilmen's Reciprocal Ass'n v. Harris, Tex.Civ.App., 293 S.W. 580.

Point "2" is not sustained. Over appellant's objection that the question and answer called "for a conclusion of the witness and giving his opinion; he is not shown to be an expert," appellee gave evidence as follows:

"In your opinion, will you be able, judging from what you know about your own condition, will you be able to do manual labor hereafter?

"In the present condition of the foot, no, I do not believe that I would be, unless something is done for it in some way that would help that foot out. In the present condition of it, I don't believe I would be able to do manual labor of any kind."

This evidence merely stated the simple facts as to the physical condition of the foot. Appellee states that in its present condition he cannot do manual labor, and that unless something is done to improve the condition of the foot he could not do manual labor. He did not attempt to give any opinion as to whether medical care will improve the foot. The rule is settled in this state that an injured person may give his opinion regarding his present condition as to injuries suffered, and he may after describing the injuries and condition thereof, give evidence of their effect upon him. Employers' Liability Assurance Corp. v. Williams, Tex.Civ.App., 293 S.W. 210, writ dismissed; Texas & P. R. Co. v. Rasmussen, Tex.Civ.App., 181 S.W. 212; Chicago, R. I. & G. R. Co. v. Evans, Tex. Civ.App., 143 S.W. 966, writ refused; St. Louis Southwestern R. Co. v. McDowell, Tex.Civ.App., 73 S.W. 974, writ refused. Other recent cases holding that an injured plaintiff may give his testimony as to his probable future condition; or that he considers his injury to be permanent, are: Texas Employers' Insurance Ass'n v. Davies, Tex.Civ.App., 6 S.W.2d 792, reversed on another point, Tex.Com.App., 16 S. W.2d 524; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d 246, writ dismissed; Turner v. Stoker, Tex.Civ. App., 289 S.W. 190, writ refused; and Zurich General Accident & Liability Insurance Co. v. Kerr, Tex.Civ.App., 54 S. W.2d 349, 351, writ refused, wherein the court say:

"It is apparently settled in Texas that an injured party, testifying in his own behalf, after describing his injuries, the nature, extent, and effect thereof upon his nervous and physical condition, may give

his opinion as to the probable effect of such injuries upon his earning capacity. Texas & P. R. Co. v. Rasmussen, Tex.Civ.App., 181 S.W. 212; Weatherford, M. W. & N. W. R. Co. v. White, 55 Tex.Civ.App. 32, 118 S.W. 799; Galveston, H. & S. A. R. Co. v. Holyfield, Tex.Civ.App., 91 S.W. 353; Employers' Liability Assurance Corp. v. Williams, Tex.Civ.App., 293 S.W. 210. The reason for admitting this testimony is to assist the jury in reaching a correct conclusion as to the injuries and their effect."

See also Houston & T. C. R. Co. v. Fanning, 40 Tex.Civ.App. 422, 91 S.W. 344.

Appellant's Point "3", contending that there was no jury finding that appellee's total disability would be permanent, is not sustained. This question is disposed of under our holding on Points 1 and 4, that if the jury findings were not intended to pass on such issue, then it must be assumed that the trial judge found such issue in favor of the judgment for compensation for total permanent disability.

■ Appellee's average daily wage of $4, as found by the jury, is supported by sufficient evidence. At the time of his injury, appellee was being paid $4 per day, exclusive of the bonus. Others engaged in the same employment were receiving a larger daily wage. The fact that appellee was permitted to work only part of a day on certain days would not authorize the counting of part days as whole days, so as to make the daily average about $3.20. Traders & General Insurance Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593, writ dismissed, correct judgment.

■ The evidence also supports the jury finding for payment of lump sum compensation. Appellee had two dependents, a wife and minor child. The wife had formerly been able to make money by operating a beauty shop, but her health had failed. She needed an operation, which would cost some $500, and appellee owed about $100 as doctor's bills. His child was in high school. His weekly payments would have been $13.84, which would not meet the aforementioned demands upon appellee. He testified that if paid in a lump sum, he would or might be able to invest the money in some business at which he could make a living. The matter of a lump sum payment is a matter largely left to the discretion of the trier of facts. Under facts similar to those of the instant case, lump sum payments were sustained in the following cases: Texas Employers' Ins. Ass'n v. Clack, Tex.Civ.App., 112 S. W.2d 526, affirmed without discussion of this point, 134 Tex. 151, 132 S.W.2d 399; Indemnity Insurance Co. of North America v. Wright, Tex.Civ.App., 69 S.W.2d 438, writ dismissed; Herzing v. Texas Employers' Insurance Ass'n, Tex.Com. App., 17 S.W.2d 1046.

The judgment of the trial court is affirmed.

Affirmed.