## HENWOOD v. NEAL.

### No. 5728.

Court of Civil Appeals of Texas. Amarillo.
Nov. 25, 1946.

Ramey, Calhoun, Marsh, Brelsford & Sheely, of Tyler, for appellant.

Webb, Elliott & Rogers, of Sherman, for appellee.

BOYCE, Justice.

This is a suit for damages under the Federal Employers Liability Act, §§ 1-9, 45 U.S.C.A. §§ 51-59. It was brought by the appellee, Jesse Neal, as plaintiff, against the appellant, Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas, Debtor, for personal injuries sustained by appellee while employed by the appellant as a section hand. The appellee alleged an injury to his left eye, which resulted in its removal. In a jury trial, he obtained a verdict in the amount of $4,210.-00, together with interest and costs; judgment in his favor was entered on this verdict.

The substance of the allegations upon which appellee relies for recovery is: That on the 3d day of April, 1944, while in the employ of the appellant as a section hand and while engaged in the duty of gauging tracks, he struck a tie with a pick furnished by appellant; that a sliver of metal came loose from the pick, struck appellee's left eyeball, causing injuries which required its removal; that the appellant was negligent in providing him with a pick which was so improperly tempered that it splintered when it struck the tie and in failing to have the tool properly inspected. The jury found that the appellee sustained the alleged injury to his eye; that a sliver of metal came loose from the pick and struck him in the left eye; that the pick was not properly tempered or properly inspected; that the failure of appellant to properly temper the pick was negligence and that his failure to properly inspect it was negligence; that each of these omissions was a proximate cause of the injury to appellee's eye.

It is not seriously questioned that it was appellant's duty to furnish appellee a properly tempered pick. Freeman v. Wilson, Tex.Civ.App., 149 S.W. 413, 418; Id., Tex.Com.App., 222 S.W. 551, 552. The appellant, in his first three points of error attacks the sufficiency of the evidence to support the findings that a sliver of metal came loose from the pick and that he was guilty of any negligence proximately causing the injuries sustained by appellee. In passing upon the sufficiency of the evidence to support the verdict, we are required to view it in the light most favorable to appellee. If, disregarding all adverse evidence and giving credit to all evidence favorable to him and indulging every legitimate conclusion favorable to him

which may be drawn from the facts proved, it supports the verdict, the verdict must be sustained. Vontsteen v. Rollish, Tex.Civ. App., 133 S.W.2d 589, 590, writ of error refused.

The evidence favorable to appellee is summarized as follows:

In gauging rails, it is customary for the point of a pick to be inserted in the tie as near the flange of the rail as possible; when this has been done, the rail can be moved by exerting pressure on the pick handle, which affords the required leverage. The injury occurred while appellee was working in the switch yards in Sherman; on the occasion on which appellee was injured, he struck the tie with the point of the pick and immediately felt some substance strike his left eye; he informed his foreman that something had hit him in the eye, finished his task of moving the rail to its proper position on the tie and then went to a doctor in Sherman. This doctor bandaged appellee's eye and sent him to the railroad employees' hospital at Texarkana. While enroute to Texarkana that same day, because of the pain he was suffering, appellee removed the bandage from his eye and discovered a sliver of metal on the bandage. Appellee's eye was removed at the Texarkana hospital. After returning from the hospital, he went to the scene of his injuries. His place on the section crew had not been filled since his injury. Each member of the crew, including appellee, had had a pick and other tools which he marked and used. It was not customary for members of the crew to use tools other than those which they had marked as their own. On the return, appellee saw the pick which he had used, being able to identify it by the mark which he had placed on the handle. He examined the pick and observed that a sliver had come off the point about one-half inch from the tip. At this time he also saw where the pick had penetrated the tie at the time he was hurt and examined the rail opposite the spot at which the pick had struck the tie. There were no indications that the pick had struck the rail. Appellee's foreman had previously examined the rail at this place and failed to find any evidence that the pick had struck it. Appellee testified that on the occasion on which he was injured the pick struck a knot in the tie; that the object which struck him in the eye was neither a cinder nor a rock, because there were no cinders or rocks at that place. His return to the scene of the injury occurred more than two months after the injury was sustained.

Dr. Kirkpatrick testified that appellee lost his eye as the result of an infection following the bruising of the eye; that in his opinion the blow received on the eye allowed the infection to occur.

The appellee's foreman testified picks used by the section hands were from time to time reshaped and sharpened in the railroad blacksmith shop. The pick appellee was using when hurt had been reworked. The foreman had never worked as a blacksmith and was unable by inspection to determine whether a reworked pick was properly tempered.

Appellee's witness Tatum testified that he at one time had been a railroad blacksmith. In reshaping and sharpening picks, which was done in the blacksmith shop, it was necessary to heat them to a high temperature, forge them to the desired shape and sharpness and then reheat them to the desired temperature. This temperature was not accurately determined but was ordinarily ascertained by the shade of red attained by the picks in the process of heating. After the desired temperature was reached, the picks were allowed to cool until a heat line formed and when the heat line had descended to near the points of the picks they were placed either in oil or water. If, prior to being placed in the oil or water, the picks were heated to too high a temperature, the points would be brittle. This witness further testified that a properly tempered pick would not break or splinter but that an improperly tempered pick would do so. He also testified that a blacksmith could inspect the pick and by the use of an ordinary file determine within a period of one minute the hardness of the point and whether it was properly tempered.

The appellant contends that the evidence is insufficient to identify the object which struck appellee in the eye and that it is more reasonable and probable that a

rock or some other object lying on or near the tie was knocked into appellee's eye. He further contends that it is not sufficient for the appellee to show that he might have been injured by a negligent act of the appellant but that the appellee must show that the negligent act was the proximate cause of the injury when it might have resulted from two or more causes, only one of which grew out of appellant's negligence. The direct testimony of the appellee and his foreman that there was no indication that the pick had struck the rail eliminates a sliver from the rail as the object which struck appellee in the eye; appellee's testimony that neither rocks nor cinders were present eliminates the probability that the injury was caused by a rock or cinder. It is true that appellee's testimony of the discovery of a sliver of metal on the bandage, of the discovery, more than two months later, of a sliver of metal off the pick, and of the custom followed by each member of the section crew of using his own tools only supplies remote circumstances. Likewise the testimony of the witness Tatum that an improperly tempered pick will splinter, whereas a properly tempered pick will not, and that whether a pick is properly tempered can be determined by a quick inspection by a blacksmith, falls far short of being direct testimony that the pick which appellee was using at the time he was injured was improperly tempered and had not been properly inspected. Attacks on the weight and credibility of appellee's evidence are, however, of no avail. Opinion evidence that a properly conditioned tool will not sliver was considered in Texas Mexican Ry. Co. v. Trijerina, 51 Tex.Civ.App. 100, 111 S.W. 239, writ of error refused. That slivers from a defective track drill entered a workman's eye was established by circumstantial evidence in Chicago, R. I. & G. Ry. Co. v. Evans, Tex.Civ.App., 143 S.W. 966, 970, writ of error denied. It is the function of the jury to weigh the evidence and determine the credibility of the witnesses. The United States Supreme Court has recently held that the focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, 525.

The jury are the judges not only of the facts proved but of the inferences to be drawn therefrom, provided such inferences are not unreasonable. Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618. Only when the circumstances and uncontroverted physical facts are such that the testimony cannot be true on any reasonable hypothesis, should a jury finding based on such testimony be disregarded. San Antonio & A. P. Ry. Co. v. Biggs, Tex.Civ.App., 283 S.W. 627, 631, writ of error dismissed W. O. J. In view of the rules stated, we cannot say that the inferences drawn by the jury from the testimony in this case are unreasonable.

■ The appellant stresses inconsistencies and contradictions in the testimony of appellee. Such contradictions and inconsistancies present fact issues only for determination by the jury and its verdict is final thereon. Farmers' Gin Co. v. Smith, Tex.Civ.App., 28 S.W.2d 839, 841; Rose v. O'Keefe, Tex.Com.App., 39 S.W.2d 877, 879.

For the reasons stated, the first three points of error are overruled.

■ In his fourth point of error, the appellant presents jury misconduct as a ground of reversal, contending that the jury arrived at the amount of damages to be awarded by the quotient or lot method. On the hearing on appellant's amended motion for a new trial, it developed that suggested damages ranged from $2,000 to $6,000 in amount, that after discussion and inability to agree on the amount of damages, each of the jurors wrote on a slip of paper the sum which he thought proper and gave the paper to the foreman. The foreman added the various amounts and divided the sum by 12. The quotient of $4,250 was not acceptable to the jury; none of them agreed in advance to be bound by it, and after it had been announced, other ballots were taken. After further deliberation, the jurors agreed on the sum of $4,210 as the proper amount of damages. We are of the opinion that the procedure outlined did not bring about a quotient verdict because there was no agreement in advance that the jury should be bound by the quotient and the facts show that they were not bound, continuing to ballot and deliberate after the

quotient had been obtained. Richards v. Frick-Reid Supply 'Corporation, Tex.Civ. App., 160 S.W.2d 282, 288, writ of error refused, W.O.M; Karotkin Furniture Co. v. Decker, Tex.Civ.App., 32 S.W.2d 703, 707, affirmed, Tex.Com.App., 50 S.W.2d 795. The fourth point of error is overruled.

The judgment is affirmed.