### TEXAS EMPLOYERS INS. ASS'N v. TRAPP.

#### No. 4812.

Court of Civil Appeals of Texas.  Beaumont.
April 30, 1953.

Rehearing Denied May 20, 1953.

McGregor & Sewell, Houston, and George B. Darden, Conroe, for appellant.

Helm & Jones, Houston, and Alvis S. Ellisor, Cleveland, for appellee.

PER CURIAM.

This is an appeal from a judgment in the district court of San Jacinto County in favor of the appellee.M. D. Trapp, Jr., and against the appellant Texas Employers Insurance Association in a Workmen's Compensation case. There was no controversy over whether appellee was injured in the course of his employment. The dispute was in the trial court and is on appeal over the extent and nature of disability suffered by the appellee.

The appellee alleged that his foot was severely injured and that such injury had extended to and naturally affected his entire foot and leg and further alleged that his injuries to his left great toe, left foot and left leg, singularly and collectively, had extended to and naturally affected his back and other parts of his body; that by reason of his injuries and the effects thereof he was suffering from total disability and that such disability is permanent. The appellant alleged that the injury was confined to the appellee's left foot or in the alternative to the entire left leg and that he should be compensated for this specific injury only.

The case was submitted to a jury and the jury's verdict made the following findings: (1) That the appellee sustained injuries to his left foot and to his left great toe, (2) that said injuries were accidental, and (3) they were received in the course of his employment, (3a) that such injuries have naturally extended to and affected his left hip and back, (3b) that the extension of the injuries to the left foot and left great toe contributed to his incapacity, exclusive of the incapacity resulting from the loss of use of the leg below the knee, (4) that the injuries and their effects were a producing cause of the incapacity, (5) that the appellee had sustained total incapacity and (5a) that the injuries sustained and their effects were a producing cause of such total incapacity, and (6) that such total incapacity began on April 18, 1950, the date of the injury, that (7) such total incapacity is permanent and that (8) such total incapacity is not temporary, (10) appellee has not and will not sustain any partial incapacity, that (16) the effects of the injuries to the left foot and left great toe of appellee were not confined solely to his left leg below the knee, including his left foot and left great toe, that (17) such incapacity did not result solely from the loss of the use of the injured toes and foot, that (17a) the injuries which appellee received were not confined solely to his entire left leg, that, (18) the incapacity of appellee was not produced solely by disease, some other bodily informity, or some other accidental injury. The jury also answered in favor of the appellee the issues in regard to a lump sum payment of compensation benefits and issues in regard to the average weekly wage.

On the verdict of the jury the court entered judgment for total and permanent disability benefits. After its amended motion for new trial was overruled the appellant has perfected its appeal.

By its first three points the appellant complains that the judgment for total and permanent compensation benefits is erroneous because it is without support in the evidence, or, in the alternative, is against the overwhelming weight of the evidence. It is well settled that in considering such a question, the reviewing court must view the evidence in a light most favorable to the appellee. The evidence in support of the jury's finding will be summarized: According to appellee, he went to work for Butcher-Arthur, Inc., on July

30, 1949, as a roustabout. He received his injuries about 3:30 p. m. on the afternoon of April 18, 1950. A swivel, weighing about a ton, fell grazing the side of his left leg and landing on the top of his foot, knocking appellee down. His foot was exhibited to the jury. In addition to the lacerations and fractures of his foot, there developed a big lump or corn under his left big toe. Following his injuries, appellee was taken to a hospital at Cleveland, where he remained from Friday until the following Wednesday. Thereafter, he remained at his home for about 10 weeks. After a period of 12 weeks from the date of his injuries, he went back to work for Butcher-Arthur, Inc., and stayed there for several months. He did not do full work. At first, he was given light duty, checking trucks. After he returned to his gang, his fellow-workmen helped him with his work. He left Butcher-Arthur, Inc., for what he thought was a better and an easier job. This new employment was with the State Department of Public Welfare. He stayed on that job about two months but could not hold it because of the amount of walking that was involved. He then went to the store of his father in Coldspring, where he was permitted to have a hotdog stand and to sell cigars and candy. From this he earned $10 or $15 a week. Appellee testified that when he would start walking, he would try to walk in a regular manner, but that the knot and the corn on his foot felt like he was standing on a coal. Then he would stand on the side of his foot because of the pain, and then after awhile he did not stand on it at all. It appeared that appellee would on occasions have to go to his home and rest his foot after he had been standing on it. He described the pains which he had in his back and left hip and said that at the time of the trial he was not able to be on his foot any more than he could a year before. In answering the questions of counsel for appellant, he identified a three-inch scar on the right side of his left foot and the break in the flesh between his first toe and middle toe on the left foot. While he admitted that he did not have the pain when he was sitting down or lying down, he was positive about the existence of the pain in his leg and back when he had to stand on his feet. On redirect examination, he reiterated his testimony about the pains in his hip and back and stated that he did not have those difficulties before he got hurt. Appellee and his wife and his father all testified that there was nothing wrong with Marshall Trapp, Jr., prior to April 18, 1950.

Appellee's wife testified that it was necessary for him to bathe his foot quite often. Her husband had to sleep with a pillow under his thigh on occasions. Once or twice a week in the afternoons, it was necessary for appellee to return home and rest.

Marshall Trapp, Sr., identified himself as the father of appellee and testified that he had been in the mercantile business at Coldspring, San Jacinto County, for about 28 or 29 years. He verified the fact that there were times when his son had to leave the store early. This witness further testified that he did not need his son to operate his store and that he had him there because appellee had to have something to do. Also, he said that if appellee was not his son he would not need him and that he would not hire another man to replace him.

Dr. D. M. Hale, who had practiced medicine in San Jacinto County for more than twenty years and had known appellee all of his life, testified that he had seen Marshall Trapp, Jr., a number of times after he was injured. This physician had recommended physiotheraphy and massage. He had observed the deformity of the left foot, the scar, and some atrophied muscles in the foot. Dr. Hale stated that appellee had complained of pain in his entire left leg, his hip, down to the end of his toes, and the lower part of his back. In response to questioning about his opinion with respect to the cause of the pains in the hip and back, this witness said: "I think it was originally caused by the injury to his foot, which has resulted in the posture of the foot when he walks or stands on it; it has affected the muscles and nerves of the entire leg." When the inquiry was pursued, he testified that the back had been affected. In describing the

effect of walking with an unnatural step, Dr. Hale said that it had the effect of throwing the weight bearing line out of balance and putting an extra strain on the muscles of the leg and hip and sacro-iliac and gave a tendency to cause to get out of line the joints of those particular spots. It was the opinion of this witness that as time went on the condition of the foot might show a tendency to grow worse and that the chances were that the hip and back would grow worse. Dr. Hale had had occasion to make pre-employment physical examinations for employers in many instances. From his examinations and understanding of appellee's case, the doctor said that he would not pass him for employment at hard manual labor nor for work where he would have to be on his feet. In response to questions on cross-examination, Dr. Hale said that in his opinion the condition of disability was permanent and further that he doubted whether there would be any improvement in time. Dr. Hale thought that the prospect of later uniting of the fracture in the left big toe was very poor. Furthermore, he did not think an amputation of the toe was advisable. On redirect examination, the witness made it clear that the original injury coupled with the abnormal method of walking, had produced involvement in the hip and left sacro-iliac region. The witness was of the opinion that the pain in the hip and back originated at that site and not in the foot, and that this was caused by an extra strain being put on the muscles and ligaments. It was further observed that the abnormal method of walking would cause appellee to walk out of balance and put extra strain on the muscles and ligaments in the hip and back, and that this condition was permanent.

Dr. Cowart, who testified by deposition, identified X-ray findings of a healed fracture of the 3rd metatarsal bone and an unhealed fracture in the left great toe. Later pictures showed the same condition after a lapse of another three or four months. This witness said that he had not seen appellee since November 10, 1950, and further that his opinion might be different, if he had the benefit of a later examination, coupled with information about pain in parts of the body of appellee other than his left foot.

Dr. Barrett, who likewise testified by deposition, last saw appellee on July 12, 1950, about fourteen months before the date of the trial. Obviously, he was not in a position to give any testimony on the basis of the developments after appellee attempted to return to work. The remaining medical witness was Dr. Bell, who was called by appellant. This witness said that appellee had not complained of any pain other than in his great toe, but admitted that his opinion might be different if Marshall Trapp had complained of his back or hip. This witness likewise stated that he had overlooked the callous on his first examination, and that his examination was not as complete as it could have been. It appeared that the examination consumed something like a period of ten minutes, and the doctor said that both he and appellee were in a hurry.

When appellee was recalled to the stand, he said that at the time he was last seen by Dr. Barrett, he was still partially on crutches and that he had begun to walk on his feet without crutches only very little. His back did not begin to bother him before he got off his crutches. He said that he did not tell Dr. Cowart about his back because he had been sent to him solely for a foot examination. He did, however, contradict the statement of Dr. Bell that nothing had been said about his hip and back, and stated that when he attempted to tell this examiner about walking on the side of his foot and the hurting in his back and hip, Dr. Bell went right on examining his foot, and that when appellee saw the doctor again the doctor was fixing to leave.

■ We believe that the evidence is sufficient to support the findings of the jury. The decisions of the Texas courts in regard to compensation for a general injury in cases of this sort are numerous. Where a specific member or portion of a claimant's body has been so injured that the effects thereof have extended to other parts of his body and have thereby caused disability, the injury will be compensated

as a general injury and not as a specific injury. The older cases some time use the phrase "the injury and the effects thereof," when speaking of the extension of an injury of a specific member to other parts of the body, but the later cases hold that the injury becomes a general one when its effects extend to other parts of the body and thereby cause disability. This question will be more fully discussed under the appellant's 4th and 5th points in regard to the wording of certain special issues submitted by the court over the appellant's objection. Texas Employers Ins. Ass'n v. Hevolow, Tex.Civ.App., 136 S.W.2d 931; United Employers Casualty Co. v. Daniels, Tex.Civ.App., 142 S.W.2d 607; Superior Insurance Co. v. Owens, Tex.Civ.App., 218 S.W.2d 517 are cases in which compensation for a general injury was approved under somewhat similar facts.

· By its 4th and 5th points the appellant complains of the wording of Special Issues 4, 5 and 5a of the court's charge. By these issues the court inquired of the jury whether appellee's injuries and their effects were a producing cause of the appellee's incapacity. In particular it complains of the phrase "and their effects." It argues that the court's inquiry should have been limited to the extension of the injuries and not the effects of the injuries. Points 4 and 5 are overruled. We think that under the facts as outlined above it was proper for the trial court to submit to the jury the issues in the language used. See Texas Employers Insurance Association v. Stephenson, Tex.Civ.App., 178 S.W. 2d 883; Great American Indemnity Co. v. Sams, Tex.Civ.App., 170 S.W.2d 564; Superior Insurance Co. v. Owens, supra; Traders & General Insurance Co. v. Nunley, Tex.Civ.App., 82 S.W.2d 715; Texas Employers Ins. Ass'n v. Hevolow, supra.

By its 7th point the appellant complains of the wording of Special Issue No. 16. That issue reads as follows: "Do you find from a preponderance of the evidence that the effects of the injuries, if any, to the left foot and left great toe of M. D. Trapp, Jr., on April 18, 1950 were not confined solely to the left leg below the knee, including his left foot and left great toe?" It complains of the phrase "the effects of the injuries." Under this point the appellant makes its argument that the court should not have submitted merely whether the effects of the injuries had extended to other parts of appellee's body, but should have worded the inquiry to include the injury itself. It says that the issue was vague and indefinite because it permitted the jury to find that the injury received was not limited to the left leg below the knee, although the jury believed that said injury did not extend to any other part of the body. As pointed out in the cases cited above and in particular the case of Texas Employers Insurance Association v. Stephenson, supra, even if the injury itself is confined to a specific member of the body but if the effects of that injury extend to other portions of the body in such a way as to cause disability, the injury then is a general injury and not a specific one. We believe this point presents no error and it is overruled.

■ By its 6th point the appellant complains of the following occurrence upon the trial: When the jury in the case first brought in a verdict the answers to Special Issue Nos. 3b and 17 were both in the affirmative. These were findings that the injuries to the left foot and left great toe contributed to appellee's incapacity exclusive of the incapacity resulting from the loss of use of the leg below the knee and further that such incapacity resulted solely from the loss of the use of the injured toes and foot. At the request of counsel for appellee the jurors were sent back for further deliberation with the following instructions from the court: "Gentlemen of the Jury:

"You have answered Special Issue No. 3B 'Yes', thereby finding that the extension, if any, of the injuries, to the left foot and left great toe of M. D. Trapp, Jr. suffered by him on April 18, 1950, contributed to his incapacity, if any, exclusive of the incapacity resulting from the loss of the use of the leg below the knee, and you have answered Special Issue No. 17 'We do', thereby finding that the incapacity which you have found resulted solely from

the loss of the use of the injured toes and foot.

"These answers are in conflict. The Court does not desire to indicate how you shall answer Special Issues but only to point out the conflict in your answers; so, as stated in the main charge, you must answer the Special Issues from the evidence as you are therein instructed. You are entirely free to make any answer to any Special Issue in the Court's charge as you may find in accordance with the instructions of the Court. You will return to your room and reconcile your answers.

"/s/ W. B. Browder

"Judge Presiding"

The appellant made the following objection to this instruction:

"In the further alternative, the defendant says that if any instruction is to be given by the Court relating to any conflict in the verdict of the jury, the instruction given is not a proper instruction for the reason that if any conflict exists between the jury's answers to Special Issues No. 3-B and 17, it necessarily follows that the jury's answers to said issues also conflict with answers made by the jury to other issues in the Court's charge, namely, Special Issue No. 3-A, 4, 5-A, and 17-A, or at least between some of the issues referred to, and the action of the Court in referring specifically to only Special Issues No. 3-B and 17, has the effect of highlighting said two issues, and in effect constitutes a double submission of Special Issue No. 3-B with undue emphasis thereon, and further amounts to a coercion of the jury to make a change to the answer to said two issues without making a change in their answers to any other issues in the Court's charge, which the jurors might consider appropriate if any change is to be made by them in their answers to Special Issue No. 3-B or Special Issue No. 17."

It calls attention to Rule 295, Texas Rules of Civil Procedure, which is as follows: "If the verdict is informal or defective, the court may direct it to be reformed at the bar. If it is not responsive to the issues submitted, or contains conflicting findings, the court shall call the jury's attention thereto in writing and send them back for further deliberation." The appellants contend under this point that by the wording of the above rule it became the trial court's duty to call the jury's attention to all of the conflicting findings in their verdict and not to just some of the conflicts. It says that while the jury's first answer to Special Issue No. 17 was in conflict with their answer to Issue No. 3-B, it ways also in conflict with their answers to Special Issues Nos. 4, 5-A and 17-A. On the authority of the opinion of this Court in Superior Insurance Co. v. Owens, supra, we hold that the apparent conflict of this first answer by the jury to Special Issue No. 17 and Special Issues 4, 5-A and 17-A was not such a conflict in findings that they could not be reconciled and therefore no error is shown in the instruction given by the trial court. No harm is shown to the appellant by this instruction given by the court because the court did not instruct them that they were to make changes only to those two issues included in its instruction. At least the jury was at liberty to make any changes in its entire verdict which it desired. Also, since we believe that, as indicated above, there was evidence to support the jury's finding that the effects of appellee's injuries to his foot and toe had extended to other parts of his body, the jury's affirmative answer to Special Issue 17 still would not have been in conflict such as to preclude a judgment for a general injury. This point presents no error and it is overruled.

By its 8th point the appellant contends that there was no evidence to justify the finding of "manifest hardship and injustice" to the appellee in event compensation benefits should not be paid in a lump sum. The question of payment in a lump sum is largely at the discretion of the trial court and such an award should not be disturbed on appeal except on a showing of abuse of such discretion. Texas Indemnity Ins. Co. v. Arant, Tex.Civ. App., 171 S.W.2d 915; Texas Employers Insurance Association v. Long, Tex.Civ. App., 180 S.W.2d 629. The evidence here

118

from the appellee was that he did not own his home and if awarded a lump sum he would try to pay the debt on his home or a part of it; that he owed $8,300 on his home; that he would use some of the money for additional medical treatment if he got it in a lump sum. Appellee had testified earlier in the trial that he was married and had one daughter. We are not in disagreement with the opinion of the jury in the trial court that appellee would be better off with a lump sum award for payment of debt on his home and further medical treatment than if he were paid his compensation in weekly payments and this point is overruled.

The judgment of the trial court is affirmed.